[No. A031364. First Dist., Div. Three. Oct. 16, 1987.]

ANDREA WASHBURN, Plaintiff and Appellant; ROGER GLASSEY et al., Plaintiffs and Respondents, v. CITY OF BERKELEY et al., Defendants; ANNA RABKIN, Real Party in Interest and Appellant.

**COUNSEL**

Fred M. Feller and York, Buresh & Kaplan for Plaintiff and Appellant and for Plaintiffs and Respondents.

Amitai Schwartz, Paul Bernstein, Margaret C. Crosby, Alan L. Schlosser, and Edward M. Chen for Real Party in Interest and Appellant.

**OPINION**

SCOTT, J.—Andrea Washburn and others (plaintiffs) filed a petition for writ of mandate against the City of Berkeley (City) and others pursuant to Elections Code section 5025, challenging as false and misleading a ballot argument submitted in support of a local initiative measure. Following entry of a stipulated judgment, plaintiffs were awarded attorney fees under Code of Civil Procedure section 1021.5 from real party in interest Anna Rabkin (Rabkin). Rabkin attacks the fee award on several grounds. She argues: (1) plaintiffs waived any claim to attorney fees; (2) plaintiffs do not qualify for fees under section 1021.5; (3) ballot arguments are privileged within the meaning of Civil Code section 47 and exempt from the general rules governing awards of fees; and (4) the fee award violated her First Amendment right to free speech and her California constitutional right to

petition the government for redress of grievances. Plaintiff Washburn (Washburn) has cross-appealed, arguing that the court improperly calculated the award. We affirm the order.

STATEMENT OF THE CASE

The Elections Code establishes a procedure permitting individual voters and citizen groups to submit ballot arguments to the city clerk for or against initiatives and city measures in municipal elections. The arguments are to be printed and included with the sample ballots mailed to registered voters at city expense; there is no printing or mailing cost to those submitting the arguments. (See Elec. Code, §§ 4015, 4015.5, 5010-5016.) Elections Code section 5025 requires these election materials to be made available for public examination prior to printing; it also permits a voter or the city clerk to seek a writ of mandate or injunction to amend or delete any or all of the material, on the ground that it is "false, misleading or inconsistent with the requirements of this chapter . . . ."[1]

Among the issues on the ballot in the City in November 1984 were two competing recycling ordinances, Measures H and G. Prior to the election, plaintiffs, several voters who supported Measure H, filed a petition for writ of mandate pursuant to Elections Code section 5025, seeking the deletion or alteration of certain statements submitted by the proponents of Measure G for inclusion in the voter information pamphlet. The petition alleged that those statements were false or misleading. Named as real parties in interest were those who signed the argument in favor of Measure G, among them Rabkin.[2] Only Rabkin and one other person opposed the petition. As defendant below, the City asked the trial court to order three of the changes sought by plaintiffs, but took no position on the rest of the challenged statement.

After the trial court announced a tentative ruling on the petition, a conference was held in the court's chambers. Rabkin participated, unrepresented by counsel. An agreement was reached as to the form and content of the writ, the terms of which were substantially the same as the tentative ruling. Pursuant to the agreement, a writ was issued ordering three of the seven changes sought by plaintiffs. The changes ordered were the deletion of

---

[1] In pertinent part, section 5025 provides: "A peremptory writ of mandate . . . shall be issued only upon clear and convincing proof that the material in question is false, misleading or inconsistent with the requirements of this chapter, and that issuance of the writ . . . will not substantially interfere with the printing or distribution of official election materials. . . . The clerk shall be named as respondent and the person or official who authored the material in question shall be named as real parties in interest."

[2] Rabkin was then the City's auditor, but is a party to this litigation as an individual, not in her capacity as a city official.

the words "illegal" and "illegally" from sentences which read ". . . they continue to defend their illegal recycling contract award . . ." and ". . . they illegally awarded a recycling contract. . . ." In addition, the following sentence was ordered stricken: "They staged an illegal break-in at the Berkeley Recycling Center." The writ did not mention attorney fees.

Plaintiffs then filed a motion seeking attorney fees pursuant to Code of Civil Procedure section 1021.5 from Rabkin and Nancy Skinner. After a hearing, the trial court granted the motion for fees as against Rabkin alone. After another hearing to determine the amount of fees, at which plaintiffs sought over $10,000, the court ordered that Rabkin pay attorney fees of $3,429.17 and costs of $105. This appeal and cross-appeal followed.

## WAIVER

■ The petition for writ of mandate did not request an award of fees, and the stipulated writ itself made no reference to attorney fees. Rabkin first argues that plaintiffs impliedly waived any entitlement to fees.

Code of Civil Procedure section 1021.5 authorizes a court to award attorney fees to a successful party in any action "which has resulted in the enforcement of an important right affecting the public interest," provided certain other criteria are satisfied. A significant benefit must have been conferred on the general public or a large class of persons. In addition, the necessity and financial burden of private enforcement must be such as to make the award appropriate.

■ There is no requirement that the intent to seek attorney fees under section 1021.5 must be pleaded in the underlying action. (*Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 678, fn. 16 [186 Cal.Rptr. 589, 652 P.2d 437].) Such fees are not part of the underlying cause of action, but are incidents to the cause and are properly awarded after entry of a stipulated judgment, unless expressly or by necessary implication excluded by the stipulation. Absent affirmative agreement of the parties to the contrary or facts surrounding the agreement which indicate that the parties intended a waiver of fees, the trial court retains jurisdiction after the filing of a compromise agreement to consider a motion for fees pursuant to section 1021.5. (*Folsom, supra,* at pp. 678-681.)

■ The *Folsom* case does not support Rabkin's contention that plaintiffs waived fees. Attorney fees were not discussed at all in the *Folsom* settlement negotiations. The Supreme Court refused to infer waiver from silence and held that the trial court retained jurisdiction to award fees despite the settlement. (*Folsom, supra,* 32 Cal.3d at p. 681.) In this case

there is even less to support a claim of waiver than in *Folsom,* because here fees were mentioned at the settlement negotiations, but the matter was left unresolved.

According to Rabkin's declarations in opposition to the motion for fees, at the settlement conference plaintiffs' counsel raised the question of fees and stated that he would not seek fees if Rabkin and the others agreed to all the changes sought by plaintiffs. All the challenged statements were not deleted, Rabkin declares, because the trial court agreed with her that certain of them should remain. Her declaration also mentions comments by the court and another counsel present about whether fees could or would be awarded in such a case. In addition, she declares that she believed the reference to fees was an attempt to influence the bargaining process, and notes that she was unrepresented by counsel. While Rabkin's declarations indicate that there may have been some uncertainty about plaintiffs' entitlement to fees, there is nothing in the facts surrounding the agreement which suggests that the parties intended a waiver of fees.[3]

## REQUIREMENTS OF CODE OF CIVIL PROCEDURE SECTION 1021.5

■ Rabkin also argues that plaintiffs were not entitled to an award of fees under Code of Civil Procedure section 1021.5 because their private interest in promoting their own ballot measure outweighed any public interest involved. She points out that among the plaintiffs is Washburn, who was a member of the Berkeley City Council at the time of the election, and that it was the council which proposed Measure H.

Section 1021.5 mandates that the necessity and financial burden of private enforcement must be such that an award of fees is appropriate. An award is appropriate when the cost of the claimant's legal victory transcends his or her personal interest. Stated another way, the question is whether the need for pursuing the lawsuit placed a burden on the plaintiff out of proportion to his or her individual stake in the matter. (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 941 [154 Cal.Rptr. 503, 593 P.2d 200].) "This requirement focuses on the *financial* burdens and incentives involved in bringing the lawsuit." (*Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321, fn. omitted [193 Cal.Rptr. 900, 667 P.2d 704], italics added.)

In *Press,* plaintiffs trying to qualify an initiative measure for a statewide election were ordered by certain store officials to stop gathering signatures

---

[3] In her brief Rabkin argues that she would not likely have settled had she thought she would be subject to attorney fees of large or uncertain magnitude, but she did not make that assertion in her declarations in opposition to the motion for attorney fees and cannot raise a new issue of fact on appeal.

in front of the store. Plaintiffs succeeded in obtaining an injunction restraining defendants from denying them access to the premises, and were awarded attorney fees pursuant to section 1021.5. Concluding that the award was not an abuse of discretion, the Supreme Court stated that because plaintiffs had no pecuniary interest in the result of the litigation, the financial burden was such that a fee award was appropriate to insure the effectuation of the people's fundamental rights of free expression and petition. (34 Cal.3d at pp. 318-321.) The court acknowledged that plaintiffs had personal interests in the outcome of the initiative sufficient to induce them to bring the action, but considered that fact irrelevant. "[S]ection 1021.5 focuses not on plaintiffs' abstract personal stake, but on the financial incentives and burdens related to bringing suit." (*Id.,* at p. 321, fn. 11.)

In this case plaintiffs may have had an "abstract personal stake" or personal interest in Measure G sufficient to induce them to challenge the accuracy of real parties' ballot arguments, but there is nothing in the record to indicate they had a pecuniary interest either in the results of the election or the outcome of the Elections Code litigation.

Rabkin ignores the substantial benefit to the public of a successful action under Elections Code section 5025. That benefit is obvious, given the significance of ballot arguments in the electoral process. In enacting section 5025 and other similar statutes (see, e.g., Elec. Code, §§ 10013.5, 3576; Gov. Code, § 88005.5), the Legislature has expressed its determination that the state has a strong interest in providing the electorate with accurate information in voter pamphlets. Our Supreme Court has also commented on the importance of the pamphlet, stating: "The voter's pamphlet, which accompanies the sample ballot, purports to be an authoritative document that appears to give an imprimatur of official approval to statements . . . included therein. It is quite likely that this document would carry greater weight in the minds of the voters than normal campaign literature. . . ." (*Knoll* v. *Davidson* (1974) 12 Cal.3d 335, 352 [116 Cal.Rptr. 97, 525 P.2d 1273].) Accuracy in ballot arguments is of additional importance because they are "accepted sources from which [courts] ascertain the voters' intent and understanding of initiative measures." (*In re Lance W.* (1985) 37 Cal.3d 873, 888, fn. 8 [210 Cal.Rptr. 631, 694 P.2d 744]; *Legislature* v. *Deukmejian* (1983) 34 Cal.3d 658, 673, fn. 14 [194 Cal.Rptr. 781, 669 P.2d 17].)

Where an action results only in vindication of the rights of a few individuals, an award of fees under section 1021.5 is not appropriate. (See, e.g., *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 167 [188 Cal.Rptr. 104, 655 P.2d 306].) In contrast, where the decision results in a substantial benefit to the public, and where the plaintiffs have no

pecuniary interest in the outcome of the litigation, as in this case, the financial burden is such that a fee award is proper. (See, e.g., *Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at p. 321.) The trial court did not err in concluding that plaintiffs satisfied the requirements for an award of fees under section 1021.5.

## CIVIL CODE SECTION 47

■ Next, Rabkin contends that the award of fees was improper because ballot arguments are privileged under Civil Code section 47 as statements made in legislative or other official proceedings. Rabkin asserts that section 47 protects all statements made in such proceedings "from monetary awards." Her argument overstates the effect of the privilege and ignores the purpose of an attorney fee award under Code of Civil Procedure section 1021.5.

In pertinent part, Civil Code section 47 provides: "A privileged publication . . . is one made— . . . [¶] 2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law . . . ." The nature and evolution of that privilege was discussed recently by the Supreme Court in *Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157 [232 Cal.Rptr. 567, 728 P.2d 1202]. ■ The privilege recognized in section 47 derives from common law principles establishing a defense to the tort of defamation. "[H]istorically, the section was primarily designed to limit an individual's potential liability for defamation." (*Oren Royal Oaks, supra,* at p. 1163.) Over the last 30 years, however, numerous California cases have held that statutory privilege applies to various other tort theories under which plaintiffs have sought to recover damages for conduct of a defendant that would be privileged for defamation purposes. (*Id.,* at p. 1164 and fn. 5.) In other words, section 47 operates to limit tort liability. (*Id.,* at p. 1168.)

Rabkin cites only one case in which the privilege of Civil Code section 47 has been applied other than as a defense in a tort action, *Bernstein* v. *Alameda etc. Med. Assn.* (1956) 139 Cal.App.2d 241 [293 P.2d 862]. In that case, a physician challenged his expulsion from a county medical association for violating certain of the American Medical Association's rules of ethics, among them that a physician should not disparage his predecessor on a case. The evidence established that in an autopsy report prepared by Dr. Bernstein for use in a judicial proceeding, he had criticized an earlier autopsy by another physician. The appellate court held that evidence did not show a violation of the rule. It pointed out that Bernstein's report would be privileged under section 47, and refused to read into the rule an intent by the American Medical Association to interfere with the judicial process.

(*Id.,* at pp. 244-247.) The *Bernstein* case may establish that one cannot be expelled from a professional association based on a rule which is contrary to the public policy articulated in section 47, but the case does not support Rabkin's theory that section 47 applies to preclude an award of attorney fees under Code of Civil Procedure section 1021.5.

■■ Civil Code section 47, subdivision 2, bars certain tort causes of action which are predicated on protected conduct, but a motion for attorney fees under Code of Civil Procedure section 1021.5 is not analogous to a tort cause of action. The primary purpose of a civil tort action is to compensate an injured person for damage suffered, at the expense of the wrongdoer. (Prosser & Keeton, Torts (5th ed. 1984) § 2, p. 7.) In contrast, an award of attorney fees under section 1021.5 is not remuneration for injury, but is akin to costs. (*Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d at pp. 678-679.) As the United States Supreme Court has observed with respect to a fee award under the Civil Rights Attorneys' Fees Awards Act (42 U.S.C. § 1988), the award does not compensate the plaintiff for the injury which brought him or her into court. Instead, the fee award reimburses the plaintiff for some of the expense incurred in seeking relief. (See *Hutto* v. *Finney* (1978) 437 U.S. 678, 695, fn. 24 [57 L.Ed.2d 522, 537, 98 S.Ct. 2565]; *White* v. *New Hampshire Dept. of Empl. Sec.* (1982) 455 U.S. 445, 452 [71 L.Ed.2d 325, 331-332, 102 S.Ct. 1162].)[4] Civil Code section 47 is inapplicable in this case.

### CONSTITUTIONAL ARGUMENTS

Rabkin contends that the award of fees violates her First Amendment right to freedom of speech and her right under the California Constitution to petition the government for redress of grievances.

As a preface to our discussion of Rabkin's constitutional arguments, it must be emphasized that she does not challenge the constitutionality of Elections Code section 5025 itself. Rabkin argues that it is the award of money, not the procedure for injunctive relief under section 5025, which is constitutionally impermissible. Our analysis, therefore, assumes that section 5025, both on its face and as applied in this case, does not infringe on any of Rabkin's rights under the federal or the California Constitutions.

a. *First Amendment rights*

■ First, Rabkin argues that the award must be set aside because the First Amendment prohibits an award of money based on speech about

---

[4]California courts often look to federal decisions when interpreting section 1021.5 because the Legislature relied heavily on federal precedent when enacting that section. (*Westside Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348, 352, fn. 5 [188 Cal.Rptr. 873, 657 P.2d 365].)

public issues in the absence of findings that the offending statements were knowingly false or in reckless disregard of truth. She relies on *Gertz* v. *Robert Welch, Inc.* (1974) 418 U.S. 323 [41 L.Ed.2d 789, 94 S.Ct. 2997] and other cases for the proposition that "findings of fault are required when money is to be awarded based upon free expression pertaining to public issues."

Just as Rabkin overstated the nature of the Civil Code section 47 privilege, she enlarges the court's holding in *Gertz,* and her reliance on that and other related cases is misplaced. The principal question in *Gertz* was whether a newspaper or broadcaster who published a defamatory falsehood about a private individual could claim a constitutional privilege against liability for damages resulting from the injury inflicted by the falsehood. (*Gertz* v. *Robert Welch, Inc., supra,* 418 U.S. at pp. 332-346 [41 L.Ed.2d at pp. 800-809].) The court held that states could define the appropriate standard of liability, provided they did not impose liability without fault. (*Id.,* at pp. 339-347 [41 L.Ed.2d at pp. 804-810].)

*Gertz* involves the tension between the First Amendment rights of the communications media and the state's interest in compensating individuals for harm inflicted on them by defamatory falsehood (418 U.S. at pp. 339-346 [41 L.Ed.2d at pp. 804-809]), as do the other cases upon which Rabkin relies, such as *Blatty* v. *New York Times Co.* (1986) 42 Cal.3d 1033 [232 Cal.Rptr. 542, 728 P.2d 1177] and *Reader's Digest Assn.* v. *Superior Court* (1984) 37 Cal.3d 244 [208 Cal.Rptr. 137, 690 P.2d 610]. Those cases are irrelevant here, however, because an award of attorney fees under Code of Civil Procedure section 1021.5 is not compensation for damages caused by a false statement. (See discussion *infra,* at p. 587.) For the same reason, cases holding that statements of opinion are not within the definition of libel are irrelevant. The question here is not liability for damages, but the propriety of an award of attorney fees under section 1021.5, and no finding of fault is required under that statute. (See *Citizens Against Rent Control* v. *City of Berkeley* (1986) 181 Cal.App.3d 213, 231-232 [226 Cal.Rptr. 265]; *Schmid* v. *Lovette* (1984) 154 Cal.App.3d 466, 475 [201 Cal.Rptr. 424].)

Rabkin also argues that the fee award violates her First Amendment rights because the state's interest furthered by the imposition of fees is outweighed by the inhibition on truthful expression in ballot arguments which results from the threat of a fee award.

"[A] State has a legitimate interest in upholding the integrity of the electoral process itself. But when a State seeks to uphold that interest by restricting speech, the limitations on state authority imposed by the First Amendment are manifestly implicated." (*Brown* v. *Hartlage* (1982) 456

U.S. 45, 52 [71 L.Ed.2d 732, 740, 102 S.Ct. 1523].) "When a State seeks to restrict directly the offer of ideas by a candidate to the voters, the First Amendment surely requires that the restriction be demonstrably supported by not only a legitimate state interest, but a compelling one, and that the restriction operate without unnecessarily circumscribing protected expression." (*Id.,* at pp. 53-54 [71 L.Ed.2d at p. 741].)

While the latter principles are well-settled, we emphasize again that Rabkin has not challenged the constitutionality of Elections Code section 5025. For purposes of this litigation at least, she has effectively conceded that the state has a compelling interest in the integrity of the electoral process which permits restricting speech by correcting or deleting ballot arguments which are to be mailed to voters at public expense, based on proof by clear and convincing evidence that the arguments are false, misleading, or inconsistent with the requirements of the Elections Code. Rabkin argues only that the balance shifts when an award of attorney fees is placed in the equation. With the potential for an award of fees, she urges, the intrusion on speech becomes impermissibly severe. She reasons, "A speaker will hesitate very little to express his [or her] views despite the prospect of a legal action to correct false statements. However, if the risk is not only a lawsuit to make corrections but also the potential loss of several thousand dollars of personal funds, the deterrent effect on truthful speech is manifest."

We do not agree with Rabkin's assessment of the added deterrent effect on speech of the possibility of a fee award. What Rabkin ignores is that one who must defend a section 5025 action will be faced with the expense of his or her own attorney fees. Rabkin has not established that the potential for an award of attorney fees to the other side in such an action inhibits speech to a significantly greater degree than does the prospect of the action itself.

Rabkin also argues that an award of fees is unnecessary to advance the state's interest in providing the electorate with accurate information and preserving the integrity of the electoral process. That interest is served, she reasons, by deleting the offending statements from the voter information pamphlet; anything beyond that is not necessary. Somewhat inconsistently, while Rabkin perceives the potential for a fee award as severely inhibiting speech, she also deems it of scant significance to those who might consider filing petitions under section 5025. She insists that the opponents of a measure will have incentive enough to file challenges to ballot arguments without the "marginal incentive" provided by the possibility of a fee award if they are successful. Rabkin's argument assumes that all proponents and opponents of initiatives will have the financial ability to take legal action, but that assumption is incorrect. (See generally, Lowenstein, *Campaign Spending and Ballot Propositions: Recent Experience, Public Choice Theory*

*and the First Amendment* (1982) 29 UCLA L.Rev. 505, 544-547, 570-579.) Regardless of a voter's interest in a particular measure, as a practical matter he or she may be financially unable to initiate and successfully pursue an action under section 5025.

The objective of the private attorney general doctrine of attorney fees is the encouragement of suits effectuating a strong public policy and benefiting a broad class of citizens. "The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. [Citations.]" (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 933.) With the enactment of Elections Code section 5025 and other similar statutes, the Legislature has expressed the view that ballot arguments which are sent to voters at public expense should be factually accurate, *and* has explicitly invited individual voters to initiate lawsuits to effectuate that public policy. We conclude that there is no First Amendment infirmity in an award of attorney fees under Code of Civil Procedure section 1021.5 to a successful petitioner in an Elections Code section 5025 action.

b. *California constitutional right to petition the government*

Rabkin also contends that the attorney fee award violates her right under the California Constitution to petition the government for a redress of grievances. First, she argues that the initiative petition directly implicated that right, because the petition was a "grievance against the government" which criticized the city's recycling policy and the members of the city council. She then argues that the right to petition "clearly compels the conclusion that ballot arguments concerning a petition for a redress of grievances . . . are absolutely immune against claims for damages or fees by opponents of the petition."

We question whether Rabkin's submission of ballot arguments in support of an initiative measure was an exercise of her right of petition. The right of petition recognized in article I, section 3 of the California Constitution protects the freedom to seek redress from all three coordinate branches of government. It protects attempts to obtain redress through the institution of administrative and judicial proceedings, as well as through importuning executive officials and the Legislature. (*City of Long Beach* v. *Bozek* (1982) 31 Cal.3d 527, 532-534 [183 Cal.Rptr. 86, 645 P.2d 137], vacated 459 U.S. 1095 [74 L.Ed.2d 943, 103 S.Ct. 712], reiterated 33 Cal.3d 727 [190 Cal.Rptr. 918, 661 P.2d 1072].) The ballot arguments submitted

here, however, were prepared in conjunction with the people's powers of initiative and referendum, reserved to them under article IV, section 1 of the California Constitution. The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them. (Cal. Const., art. II, § 8, subd. (a).) Accordingly, the ballot arguments were addressed to the City's voters, not to any branch of government.

We also conclude that even if the ballot arguments do indirectly implicate the right to petition the government (see *Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at p. 319), that right does not bar the award of fees. The case upon which Rabkin relies, *City of Long Beach* v. *Bozek, supra,* 31 Cal.3d 527, is fatal to her argument. In *Bozek,* the Supreme Court held that a city cannot maintain a malicious prosecution action against one who has unsuccessfully sued for various torts arising out of alleged police misconduct. The court reasoned in part that permitting the malicious prosecution action would potentially chill the exercise of the right to petition the government through the courts for redress of grievances. (*Id.,* at pp. 535-536.) But in response to the city's argument that malicious prosecution actions were necessary to compensate municipalities for the costs of defending against baseless suits, the court noted recent legislation which would permit an award of attorney fees in the underlying action, upon a finding that the action was not maintained in good faith and with reasonable cause. "From a constitutional standpoint," the court reasoned, "an award of expenses . . . under the standards set out in the above statutes is a clearly preferable remedy to an independent action for malicious prosecution with its cost in terms of additional attorneys' fees and imposition upon judicial resources." (*Id.,* at pp. 537-538.) In other words, while the court held that the threat of a malicious prosecution action for damages would impermissibly chill the right to petition, it found no similarly chilling effect in the potential for an award of attorney fees as permitted by statute. In light of *Bozek,* Rabkin's contention that her right to petition gave her absolute immunity from an award of fees must fail.

### CROSS-APPEAL

The trial court concluded that plaintiffs' attorneys had worked 75.5 hours, and that $75 per hour was a reasonable fee. It then divided the fees for the first 33.5 hours by nine, and awarded fees against Rabkin in the amount of $279.17 for those hours. The court reasoned that Rabkin was one of nine persons who signed the challenged ballot argument, and should bear only one-ninth of the burden for the initial preparation of the petition for writ of mandate. For the fees incurred by plaintiffs after Rabkin decided to contest the case, the court awarded fees at $75 per hour against her.

■ Plaintiff Washburn has cross-appealed from that award. She does not dispute either the total hours worked or the hourly rate, but contends the court's method of calculating the amount to be awarded against Rabkin for the first 33.5 hours was improper. Washburn argues that if others should share that fee burden, Rabkin can seek contribution from them.

■ In general, a trial court has discretion to determine the proper amount of an attorney fee award under Code of Civil Procedure section 1021.5, and that determination will be reversed only for an abuse of discretion. (See, e.g., *Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at pp. 321-324 [court abused discretion in calculating amount of award because it failed to apply lodestar adjustment method].)

■ Neither party cites a California case in which the court has calculated a fee award as did the trial court in this case. As Rabkin points out, however, federal courts have adopted various methods of apportioning or allocating fees among defendants in cases involving fee awards pursuant to 42 United States Code section 1988, and this court may look to federal law in applying section 1021.5. In *Grendel's Den, Inc.* v. *Larkin* (1st Cir. 1984) 749 F.2d 945 the court instructed, "[A] number of theories for apportioning fees have been advanced . . . . Among them are the simplest approach of dividing the award equally among the defendants . . . , and the more sophisticated approaches of apportionment by degree of each defendant's liability . . . , and apportionment by relative time spent litigating against each defendant. . . . Each of these theories may be more or less valid in a given case." (*Id.,* at pp. 959-960.)

In *Mendoza* v. *Blum* (S.D.N.Y. 1985) 602 F.Supp. 200, for example, the court apportioned liability for fees according to the relative culpabiility of various defendants. (*Id.,* at pp. 202-203.) In *Vulcan Soc. of Westchester Cty.* v. *Fire Dept.* (S.D.N.Y. 1982) 533 F.Supp. 1054, plaintiff argued that the fees should be divided equally among the six defendants. The court agreed in general with that principle, but added, "The issues are all interrelated. When one party raised a particular question, all the parties usually became involved, because their interests were at stake. Nevertheless . . . certain aspects of the litigation are solely attributable to one or more, but fewer than all, defendants. Fairness requires . . . that those matters be identified, and that fees be divided among only responsible defendants." (*Id.,* at pp. 1063-1064.) In *Dunten* v. *Kibler* (N.D.Ga. 1981) 518 F.Supp. 1146 one defendant requested that an award of attorney fees be "broken down" as between her and a second defendant, who did not appear at the trial of plaintiff's civil rights action and who did not oppose the motion to award fees. The court noted that since both defendants had been found liable by the jury, the defendant who appeared should not have to bear the entire

burden of the fee award. The court ordered the award divided equally between the two defendants. (*Id.,* at p. 1159.)

Although plaintiffs named all signatories of the ballot argument as real parties in interest in their petition for writ of mandate, they chose to seek attorney fees from only Rabkin and one other person, Nancy Skinner. The court determined that the preliminary aspects of the litigation were attributable to all the real parties in interest, whereas the rest of the litigation was solely attributable to Rabkin. While Washburn characterizes the court's calculations as a reduction of the fee award, in effect the court's procedure was consistent with its discretion to allocate a fee award to the parties responsible. Washburn cites no authority holding that the court was obligated to order Rabkin to pay the entire amount of fees incurred. Under all the circumstances, Washburn has not established an abuse of discretion.

The order is affirmed.

White, P. J., and Merrill, J., concurred.