[No. S125502. Mar. 2, 2006.]

WARD CONNERLY, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD et al., Defendants and Respondents;
THE CALIFORNIA BUSINESS COUNCIL FOR EQUAL OPPORTUNITY
et al., Real Parties in Interest and Appellants.

1170

## COUNSEL

Pacific Legal Foundation, Anthony T. Caso, Deborah J. La Fetra and Timothy Sandefur for Plaintiff and Appellant.

Ralph D. Black for Defendants and Respondents Board of Governors of the California Community Colleges and Thomas J. Nussbaum, Chancellor of the California Community Colleges.

Bill Lockyer, Attorney General, Louis R. Mauro, Assistant Attorney General, Catherine Van Aken and Leslie R. Lopez, Deputy Attorneys General, for Defendants and Respondents Phil Angelides, Treasurer of the State of California, Joan Wilson, Director of the California State Lottery and the California State Lottery Commission.

No appearance for Defendants and Respondents State Personnel Board and Steve Westly, State Controller.

Munger, Tolles & Olson, Jeffrey L. Bleich, Anne M. Voigts and John C. Day for Real Parties in Interest and Appellants.

Hugh F. Young, Jr., and Harvey M. Grossman for The Product Liability Advisory Council, Inc., as Amicus Curiae on behalf of Real Parties in Interest and Appellants.

## OPINION

**MORENO, J.**—This case involves litigation over private attorney general fees awarded pursuant to Code of Civil Procedure section 1021.5[1] in an action "which has resulted in the enforcement of an important right affecting the public interest . . . ." Here, plaintiff Ward Connerly successfully pursued litigation to invalidate several state statutes as unconstitutional under article I, section 31 of the California Constitution, enacted in 1996 as Proposition 209, which outlawed governmental preferential treatment by race, sex, and other categories. The state agencies that were the respondents in this writ of mandate action for the most part opted not to defend the statutes, or to litigate only issues of standing and justiciability. It fell to various amici curiae advocacy groups that were in favor of affirmative action to defend the state programs and statutes on the merits. At some point in the litigation, as will be elaborated below, the amici curiae were redesignated real parties in interest. After the litigation concluded, the trial court awarded section 1021.5 attorney fees, to be paid both by the state agencies and the advocacy groups as real parties in interest. The award was upheld by the Court of Appeal.

The advocacy groups contend that they were in essence amici curiae, and were not liable for attorney fees in litigation to declare unconstitutional statutes they were not responsible for enacting or enforcing. Connerly, on the other hand, contends that the advocacy groups should be liable for such fees because they were authentic real parties in interest, inasmuch as they had a direct interest in the litigation and were active participants that often shaped the defense of the statutes. We conclude that the advocacy groups were not "opposing parties" within the meaning of section 1021.5, and therefore reverse the Court of Appeal's judgment.

### I. STATEMENT OF FACTS

The underlying litigation involved state and federal constitutional challenges to five statutory programs that fall within the general rubric of

---

[1] All statutory references are to this code unless otherwise stated.

"affirmative action." (*Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 27 [112 Cal.Rptr.2d 5].) The litigation challenged the programs of six state agencies and officials: the State Personnel Board, the State Treasurer, the California Community Colleges, the Department of General Services, the State Controller, and the Lottery Commission. Pete Wilson, in his capacity as the Governor of California, commenced the litigation by filing, in the Court of Appeal, a petition for writ of mandate against these agencies and their officials.

A group of organizations and associations who were generally in favor of the challenged programs, the California Business Council for Equal Opportunity, California Coalition of Hispanic Organizations, California Hispanic Chamber of Commerce, California Teachers Association, Hispanic Contractors Association, and Society of Hispanic Professional Engineers, Greater Los Angeles Chapter[2] obtained permission from the Court of Appeal to appear as amici curiae. Amici curiae asserted, among other things, that there was no justiciable controversy because the action was between the Governor and his subordinate executive officers and agencies, and because no real parties in interest had been named. In response, the Governor filed an amended petition for writ of mandate naming the amici curiae as real parties in interest. The California Business Council argued that such designation did not cure the justiciability problem because it was not an authentic real party in interest, with a direct interest in litigation, but rather an amicus curiae that disagreed with the Governor's policies and positions on affirmative action.

The Court of Appeal summarily denied the petition, and this court denied review without prejudice to filing in superior court. Governor Wilson then filed his petition for a writ of mandate in the superior court. In so doing, he again named the California Business Council as real party in interest. Later, plaintiff Ward Connerly was permitted to join the litigation as a taxpayer litigant. (*Connerly v. State Personnel Bd., supra,* 92 Cal.App.4th at p. 27.) Connerly continued the litigation after Governor Wilson left office. (*Ibid.*)

The California Business Council actively participated in the litigation. It initially sought to remove the case to federal court, an action in which the state defendants did not join, and which was rejected because of the state defendants' lack of concurrence. Once back in superior court, the California Business Council filed a motion to peremptorily challenge the trial judge, Thomas Cecil, which ultimately was successful. (See *California Business Council v. Superior Court* (1997) 52 Cal.App.4th 1100, 1107–1108 [62

---

[2] Originally, there were 14 organizations and associations who joined together to appear as amici curiae in this court. Only the above six groups actively participated in the litigation on the merits. Because the six organizations can for present purposes be treated as a single association, we generally will refer to them collectively in the singular as the "California Business Council."

Cal.Rptr.2d 7].) It sought discovery regarding the affirmative action policies and practices of the various state agencies named in the litigation, and filed a successful motion to compel discovery when the Governor was not forthcoming.

Shortly after the case was returned to the superior court, the voters passed Proposition 209, adding article I, section 31 to the California Constitution, prohibiting the state, inter alia, from granting "preferential treatment to . . . any individual or group on the basis of race . . . ." Three of the six state agencies and officials that were sued, the State Personnel Board, the Department of General Services, and the State Controller, took no position on the litigation, claiming only that they were compelled to enforce existing statutes under article III, section 3.5 of the California Constitution. The State Treasurer and the Lottery Commission opposed the lawsuit on grounds of standing, justiciability, and lack of adversity, but did not otherwise defend on the merits any affirmative action program or statute. The Board of Governors of the California Community Colleges is the only state agency that appears to have defended its programs and the pertinent statutes on the merits as well as on issues of standing and justiciability.

Eventually, the trial court entered a judgment invalidating one of the statutory schemes, as well as a portion of another, but otherwise upholding them. (*Connerly v. State Personnel Bd., supra,* 92 Cal.App.4th at p. 27.) Connerly appealed and the California Business Council cross-appealed those portions of the judgment at variance with its members' respective positions. (*Id.* at p. 28.)

The Court of Appeal held that the statutory schemes were unconstitutional for the most part, but that certain portions of three of those schemes could be severed and upheld. (*Connerly v. State Personnel Bd., supra,* 92 Cal.App.4th at p. 28.) After judgment was entered, Connerly moved for an award of attorney fees pursuant to section 1021.5. The trial court determined that this was an appropriate case in which to make an award of attorney fees pursuant to section 1021.5, a ruling that was not challenged on appeal. The total attorney fee award was eventually calculated at $488,067.64. The trial court ordered that the State Personnel Board, the California Community Colleges, the State Treasurer, the Lottery Commission, the Department of General Services, and the California Business Council each pay one-sixth of the total amount of attorney fees, rejecting the California Business Council's contention that it should not be liable for such fees. The California Business Council appealed, and plaintiff Connerly cross-appealed to challenge the disallowance of a portion of the fees claimed by his attorneys.

The Court of Appeal affirmed the trial court's attorney fee award. It reviewed various Court of Appeal cases, discussed *post*, holding that real parties in interest that actively participate in litigation may be assessed attorney fees, even though they were not responsible for initiating or enforcing the policies that were the subject of the underlying litigation. The Court of Appeal focused on the trial court's finding that the California Business Council groups "participated in the litigation as full-fledged parties," distinguishing themselves from the typical amicus curiae. The Court of Appeal also rejected Connerly's cross-appeal. We granted the California Business Council's petition for review.[3]

## II.  Discussion

### A.  *Standard of Review*

The Court of Appeal reviewed the trial court's award of fees under an abuse of discretion standard. The parties argue about the proper standard, with the California Business Council contending that the issue before us should be reviewed de novo, and Connerly arguing in favor of the abuse of discretion standard.

The proper standard of review was set forth in *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142 [118 Cal.Rptr.2d 569]: "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law."

Here, the question is whether the California Business Council can be assessed attorney fees under section 1021.5 as an "opposing part[y]" within the meaning of that statute. Under some circumstances, this may be a mixed question of law and fact and, if factual questions predominate, may warrant a deferential standard of review. (See *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal. Rptr. 139, 782 P.2d 278].) As will become clear below, however, the material facts in the present case are largely undisputed. The controversy is over whether a litigant in the

---

[3] Connerly acknowledges that the state respondents have paid the entire $581,376 award to his counsel, which represents the total fee and costs awarded plus interest at the government rate of 7 percent. Connerly contends the appeal is not moot, however, because if his counsel had recovered from the California Business Council, that portion of the award would have been calculated at the legal interest rate of 10 percent. He also seeks fees related to proceedings in this court and the Court of Appeal. Because there is at least the potential of a greater recovery for Connerly if he prevails, we conclude that the appeal is not moot.

California Business Council's somewhat unusual position can be considered an "opposing party." This is a question of law and is reviewed by us de novo. (See *ibid.*)

### B. *The Merits*

Section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more *opposing parties* in any action which has resulted in the enforcement of an important right affecting the public interest . . . ."[4] (Italics added.) Thus, only an opposing party can be liable for attorney fees under section 1021.5.

■ Whether the California Business Council was an opposing party within the meaning of section 1021.5 is ultimately a question of statutory construction. " 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. . . . In order to determine this intent, we begin by examining the language of the statute.' " (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 221 [17 Cal.Rptr.3d 842, 96 P.3d 141].) ■ Because the term "opposing parties" is not defined, it can be assumed that the Legislature was referring to the conventional definition of that term. As we have recognized, the edition of Black's Law Dictionary current at the time that section 1021.5 was drafted states that " '[p]arty' is a technical term having a precise meaning in legal parlance; it refers to 'those by or against whom a suit is brought . . . , the party plaintiff or defendant . . . .' " (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 570 [21 Cal.Rptr.3d 331, 101 P.3d 140], citing Black's Law Dict. (4th rev. ed. 1968) p. 1278.)

■ Generally speaking, the opposing party liable for attorney fees under section 1021.5 has been the defendant person or agency sued, which is

---

[4] In its entirety, section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be filed therefor, unless one or more successful parties and one or more opposing parties are public entities, in which case no claim shall be required to be filed therefor under Part 3 (commencing with Section 900) of Division 3.6 of Title 1 of the Government Code.

"Attorneys' fees awarded to a public entity pursuant to this section shall not be increased or decreased by a multiplier based upon extrinsic circumstances, as discussed in Serrano v. Priest, 20 Cal.3d 25, 49."

responsible for initiating and maintaining actions or policies that are deemed harmful to the public interest and that gave rise to the litigation. (See, e.g., *Graham v. DaimlerChrysler Corp.*, *supra*, 34 Cal.4th 553; *Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604 [21 Cal.Rptr.3d 371, 101 P.3d 174]; *Maria P. v. Riles* (1987) 43 Cal.3d 1281 [240 Cal.Rptr. 872, 743 P.2d 932].) By this standard, the California Business Council clearly is not an "opposing party" because it was responsible neither for enacting nor enforcing the statutes that were judged to be unconstitutional in the underlying litigation.

■ Moreover, amici curiae traditionally have not been considered parties liable for attorney fees. (See, e.g., *Choudhry v. Free* (1976) 17 Cal.3d 660, 662, 669 [131 Cal.Rptr. 654, 552 P.2d 438] [attorney fees and costs assessed against the real party in interest under federal statute awarding attorney fees to prevailing parties in voting rights cases even though amicus curiae, rather than the respondent or the real party in interest, litigated the case].) Amici curiae, literally "friends of the court," perform a valuable role for the judiciary precisely because they are nonparties who often have a different perspective from the principal litigants. "Amicus curiae presentations assist the court by broadening its perspective on the issues raised by the parties. Among other services, they facilitate informed judicial consideration of a wide variety of information and points of view that may bear on important legal questions." (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 405, fn. 14 [11 Cal.Rptr.2d 51, 834 P.2d 745].)

The California Rules of Court formalize the distinct role of amici curiae by making separate provisions for receipt of amicus curiae briefs. (See Cal. Rules of Court, rules 13(c), 29.1(f).) The range of groups that may be granted amicus curiae status is well illustrated by the participants in the present case. The California Business Council and the other advocacy groups initially appearing as amici curiae in this case are groups generally interested in the protection of minority and civil rights. Appearing on their behalf as amicus curiae before this court is the Product Liability Advisory Council, Inc., which seeks to reform product liability law, and counts among its members Chevron Corporation, the Dow Chemical Company, and General Motors Corporation. The law firm representing Connerly, the Pacific Legal Foundation, has often appeared in this court as amicus curiae to advocate for individual property rights and limited government. (See, e.g., *Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 12 [30 Cal.Rptr.3d 30, 113 P.3d 1062].) The availability of such diverse views through amicus curiae participation enriches the judicial decisionmaking process.

Connerly does not dispute that a conventional amicus curiae that files briefs on behalf of one of the parties and may participate in oral argument is not an opposing party within the meaning of section 1021.5. Nor does he argue that the mere designation of an amicus curiae by one of the parties to litigation as a "real party in interest" necessarily makes that amicus curiae an opposing party. He contends, however, that real parties in interest may be considered "opposing parties," and that the California Business Council was a real party in the present case. The California Business Council for its part does not argue against the general proposition that real parties in interest can be held liable for attorney fees, but contends that they were not authentic real parties.

■ To address this issue, we begin by examining the meaning of "real party in interest." As was stated in *Sonoma County Nuclear Free Zone '86 v. Superior Court* (1987)189 Cal.App.3d 167, 173 [234 Cal.Rptr. 357] (*Sonoma County Nuclear Free Zone*): " 'Real party in interest' has been generally defined as 'any person or entity whose interest will be directly affected by the proceeding . . . .' [Citation.] While the real party in interest is 'usually the other party to the lawsuit or proceeding being challenged' [citation], it may be 'the person or entity in whose favor the acts complained of [operate]' or 'anyone having a direct interest in the result' [citation], or 'the real adverse party . . . in whose favor the act complained of has been done.' "

Connerly cites *Sonoma County Nuclear Free Zone* in support of his position that the California Business Council had an interest that was directly affected by the litigation. In that case, involving the Sonoma County Nuclear Free Zone Initiative on the November 1986 ballot, the opponent of the initiative (dubbed "Con-NFZ" by the Court of Appeal) had requested that the county clerk accept its ballot argument after the clerk's deadline, and was refused. Con-NFZ then filed a petition for writ of mandate in superior court to compel the county clerk to accept the late filing, but failed to notify the initiative proponent, Pro-NFZ. The superior court granted the writ petition. Pro-NFZ subsequently filed a petition for writ of mandate of its own, claiming the superior court erred, in part because Pro-NFZ was a real party in interest in the previous mandate action and should have received notice of Con-NFZ's petition for writ of mandate.

The Court of Appeal agreed. Stating, as discussed above, that a real party in interest is defined as " 'any person or entity whose interest will be directly affected by the proceeding' " (*Sonoma County Nuclear Free Zone, supra*, 189 Cal.App.3d at p. 173), the court concluded that Pro-NFZ met that definition. "Pro-NFZ and Con-NFZ were two cognizable groups contesting the merits of a county initiative. As the group who had authored and filed a direct pro

argument for the November ballot, Pro-NFZ had a clear, direct interest in the question whether Con-NFZ should be permitted a late filing. Con-NFZ's writ petition sought relief from deadlines set to ensure reasonable time for distribution of sample ballots. Even though the trial court happened to find that the late filing would not jeopardize the printing process, Pro-NFZ had a direct interest in litigating the question and participating in the hearing." (*Id.* at p. 174.)

Con-NFZ also made the related argument that Pro-NFZ was not "benefi-cially interested" in the litigation and could not bring the writ of mandate action pursuant to section 1086, which requires such interest. The Court of Appeal observed that "[u]nder the circumstances of this case, whether Pro-NFZ had a 'direct interest' sufficient to make it a real party below, and whether it has a 'beneficial interest' to permit it to file a petition for writ of mandate with this court, is essentially the same question resolved by a single analysis." (*Sonoma County Nuclear Freeze Zone, supra,* 189 Cal.App.3d at p. 174.) Quoting our definition in *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [166 Cal.Rptr. 844, 614 P.2d 276], that a beneficial interest is a "special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large," the Court of Appeal concluded that Pro-NFZ clearly met that test as the proponent of an initiative potentially jeopardized by the late filing of an opposition ballot argument. (*Sonoma County Nuclear Freeze Zone, supra,* 189 Cal.App.3d at p. 175.)

Thus, *Sonoma County Nuclear Free Zone* does not support Connerly's position. Inasmuch as a real party in interest's direct interest must be, like a beneficial interest, a "special interest to be served or some particular right to be protected over and above the interest held in common with the public at large," then Pro-NFZ as the proponent of the ballot initiative clearly met that definition when it came to litigation involving that initiative. Connerly identifies no comparable special interest for the California Business Council in the present case. Of course, amici curiae almost by definition have a particular ideological or policy focus that motivates them to participate in certain litigation, notwithstanding the lack of a direct interest in the litiga-tion's outcome. But the California Business Council's policy interest in the present case in maintaining some affirmative action programs is no different in kind from that of the typical amicus curiae and no different in substance from like-minded members of the general public.

Connerly cites a number of cases in which real parties in interest were awarded section 1021.5 attorney fees. These cases also do not support his

position. In *Washburn v. City of Berkeley* (1987) 195 Cal.App.3d 578 [240 Cal.Rptr. 784], attorney fees were imposed against the author of a contested ballot argument in support of a local initiative that gave rise to the litigation. The plaintiffs filed a petition for writ of mandate against the City of Berkeley challenging the ballot argument as false and misleading under former Elections Code section 5025. After entry of a stipulated judgment that required several changes to the ballot argument, attorney fees were assessed against the author under section 1021.5. (*Washburn, supra,* at p. 581.) As in *Sonoma County Nuclear Free Zone,* the initiative proponent and author of the offending ballot argument was deemed a real party in interest because she signed the argument at issue in favor of the recycling measure. (*Washburn, supra,* at p. 582.) Moreover, as the author of the partially misleading ballot argument, she was largely responsible for causing the conditions that gave rise to the litigation.

In *Bolsa Chica Land Trust v. Superior Court* (1999) 71 Cal.App.4th 493, 517–518 [83 Cal.Rptr.2d 850], the court awarded attorney fees not only against the Coastal Commission in a challenge to a defective local coastal plan (LCP), but also against two landowners, real parties in interest, whose developments were authorized by the plan and who participated in the litigation. Although it is unclear to what extent the landowners participated in devising the LCP, it can be reasonably inferred they had a direct interest in the plan, which authorized extensive development. Thus, although we have no occasion to determine whether the case was correctly decided, we note that it is distinguishable from the present one inasmuch as the landowners in that case, unlike the California Business Council, were bona fide real parties in interest with a direct interest in the litigation that differed from the general public.

In *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino* (1984) 155 Cal.App.3d 738 [202 Cal.Rptr. 423], plaintiff Audubon Society successfully challenged the approval of a cemetery on the grounds that the environmental impact report was inadequate. The trial court awarded attorney fees to be paid by the county and real party in interest Gold Mountain Memorial Park, Inc., the owner and would-be developer of the property in question. Gold Mountain argued on appeal that the county alone was found to have acted improperly. As the court further stated: "As noted in *Wilderness Society v. Morton* (D.C. Cir. 1974) 161 U.S. App. D.C. 446 [495 F.2d 1026], fees granted under the private attorney general theory are not intended to punish those who violate the law but rather to ensure that those who have acted to protect public interest will not be forced to shoulder the cost of litigation. In this case, Gold Mountain was a major party, actively litigating from the inception of the action in order to protect its interests. As the real

party in interest, it had the most to gain. When a private party is a real party in interest and actively participates in litigation along with the governmental agency, it is fair for that party to bear half the fees." (*San Bernardino Valley Audubon Society, Inc.*, *supra*, 155 Cal.App.3d at p. 756.) Thus, it was real party in interest's pursuit of its direct interest that gave rise to the underlying litigation.

In *Friends of the Trails v. Blasius* (2000) 78 Cal.App.4th 810 [93 Cal.Rptr.2d 193] (*Blasius*), members of the public sought via a lawsuit to maintain public access to a road on private property adjacent to a canal and to quiet title to the public easement, after the property owner put up gates blocking such access. The Nevada Irrigation District (NID), which had its own easement giving it access to the canal, was not a real party in interest in the action, but a named defendant. It joined the property owner in defending the public access closure, presumably because it was opposed to sharing its easement with the public. (*Id.* at pp. 826–827 [landowners argue that NID easement is incompatible with public easement].) The trial court entered a judgment granting an easement for a public right-of-way "subordinate to the easement rights . . . held by the defendant [NID]." (*Id.* at p. 819.)

After the plaintiffs prevailed on the public access issue, the trial court awarded attorney fees against both the landowner and NID. NID argued on appeal against such fees, not on the grounds that it was not an opposing party, but that the plaintiffs were not a "successful" party with respect to NID, because the removal of the gate affected the landowner's property interest, not NID's. The Court of Appeal, in upholding the attorney fee award, stressed NID's active role in the litigation. (*Blasius*, *supra*, 78 Cal.App.4th at p. 836.) Furthermore, the court, in upholding the award of costs to the plaintiff as a prevailing party pursuant to section 1032, clarified that the plaintiffs' success in quieting title to the public easement made it a prevailing party over NID, which sought to have exclusive easement rights to the property in question. (*Id.* at p. 839.)

Thus, in all of the above cases, those found liable for section 1021.5 fees were either real parties in interest that had a direct interest in the litigation, the furtherance of which was generally at least partly responsible for the policy or practice that gave rise to the litigation, or were codefendants with a direct interest intertwined with that of the principal defendant. In no case did the opposing party have only an ideological or policy interest typical of an amicus curiae, as the California Business Council does in the present case. Although some of the courts, above, stressed active participation in the litigation as grounds for awarding attorney fees, no court has held that active participation alone, without a direct interest in litigation, can be grounds for awarding section 1021.5 fees.

Connerly nonetheless argues, in effect, that a litigant's active participation in the litigation by itself can convert an amicus curiae into a real party in interest liable for attorney fees under section 1021.5. As discussed *ante*, the California Business Council acted in many respects as lead counsel on the litigation, answering the petition for writ of mandate, seeking discovery and litigating a discovery motion, seeking to remove the case to federal court, winning recusal of a judge, and providing the most substantive briefing on the issue. It played this active role, however, at plaintiff's invitation and with the encouragement of the trial court, in order to conduct litigation that would otherwise not have been adversarial.[5] There is no indication the Legislature contemplated that someone in that circumstance, who was neither a defendant nor an authentic real party in interest, could be considered an opposing party within the meaning of section 1021.5.

■ Moreover, as we have stated, " '[T]he fundamental objective of the [private attorney general] doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.' " (*Graham v. DaimlerChrysler Corp.*, *supra*, 34 Cal.4th at p. 565.) Given the existence of state defendants, and their uncontroverted liability for attorney fees, making the California Business Council also liable for those fees is not necessary to fulfill that purpose.

■ Furthermore, construing section 1021.5 to allow liability against the California Business Council would be contrary to the judicial policy discussed above of welcoming amici curiae in order to "facilitate informed judicial consideration of a wide variety of information and points of view that may bear on important legal questions." (*Bily v. Arthur Young & Co.*, *supra*, 3 Cal.4th at p. 405, fn. 14.) The role of an amicus curiae becomes more, not less, important when a supposedly opposing party curtails or altogether withdraws

---

[5] Connerly asserted in his brief and at oral argument that the trial court had determined that "sufficient adversity existed between the petitioners and respondents without the participation of the [California Business Council]." That assertion is not supported by the record. In fact, the trial court made clear that it was troubled by the lack of actual adversity in the case. It addressed that issue in part by quoting Witkin that for the traditional requirement of opposing parties, "the court has simply substituted the practical requirement of opposing *counsel*. . . . The danger of the friendly suit displacing litigation by the real parties in interest is minimized by a liberal practice of allowing intervention or its equivalent A 3/4 *briefs and oral argument by amici curiae*." (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 77, p. 141, second italics added.) The court then stated that the above analysis "has some application to this case given the character of the [California Business Council] and the . . . ferocity of their responses." When the court nonetheless expressed some uncertainty regarding adversity with respect to the General Services Administration, Connerly's counsel himself stated: "Again, the [California Business Council] we believe provide[s] the adversity." In making its final decision that sufficient adversity existed, the trial court again referenced the above discussion in Witkin and the "vigorousness" of the arguments presented in the court. It is therefore clear that the California Business Council's participation in the lawsuit was integral to the trial court's determination that there was sufficient adversity to permit the lawsuit to go forward.

its participation in the litigation, as largely occurred in the present case, thereby depriving the court of reasonable counterarguments to a plaintiff's position. Although the California Business Council's role in the litigation was greater than that of the typical amicus curiae, its basic function was the same: to advocate a position not out of a direct interest in the litigation but from its own views of what is legally correct and beneficial to the public interest. The policy of encouraging amicus curiae participation is not compatible with a rule that would place such a litigant at risk for attorney fees. While liability for attorney fees under section 1021.5 is based on statute rather than judicial policy, we can discern no indication that the Legislature that enacted section 1021.5 intended to undermine the above policy by penalizing with attorney fees those in the California Business Council's position.

Our observation that the state agencies in this case largely declined to defend the challenged statutes does not imply that these agencies committed misconduct. Although under article III, section 3.5 of the California Constitution, state agencies are obliged to continue to enforce statutes that appear to them to be unconstitutional (see *Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1082–1084 [17 Cal.Rptr.3d 225, 95 P.3d 459]), whether they have an obligation to defend such statutes in court is a complex issue, which we need not decide here. Nonetheless, the state, through its elected representatives, possessed the power, and indeed the exclusive power, to abandon or change the statutory scheme. Because it declined to do so, the burden of paying Connerly's attorney fees is properly imposed on the state, rather than on an amicus curiae that steps into the breach to advocate for the undefended statutes.[6]

■ We therefore hold that the California Business Council may not be held liable for section 1021.5 fees.

---

[6] Both the California Business Council and Connerly cite in support of their positions cases involving parties that formally *intervened* in litigation. (See *Independent Federation of Flight Attendants v. Zipes* (1989) 491 U.S. 754 [105 L.Ed.2d 639, 109 S.Ct. 2732]; *Charles v. Daley* (7th Cir. 1988) 846 F.2d 1057.) Under California law, at least, an intervener is considered a full-fledged party to an action by virtue of the order authorizing the intervention. (*Hospital Council of Northern Calif. v. Superior Court* (1973) 30 Cal.App.3d 331, 336 [106 Cal.Rptr. 247]; see 4 Witkin, Cal. Procedure (4th ed. 1997) Pleadings, § 207, p. 265.) In *Charles v. Daley*, the intervener acted on behalf of the defendant's position, and the court concluded that attorney fees against the intervener pursuant to 42 United States Code section 1988 was warranted. In *Zipes*, the intervener union acted more as a plaintiff than as defendant, arguing against the use of seniority rights as a remedy for past discrimination that would adversely affect its membership. (*Zipes, supra*, 491 U.S. at p. 757.) Without deciding issues not before us, we note that neither of these cases is particular apposite to the present one. The California Business Council is not an intervener, and is not acting as a plaintiff pursuing its own pecuniary interests.

## III.  DISPOSITION

The judgment of the Court of Appeal affirming an award of attorney fees against the California Business Council is reversed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.