318 F.3d 965
 John ARMSTRONG; James Amauric; Richard Ponciano; Jack Swensen; Billy Beck; Judy Fendt; Walter Fratus; Gregory Sandoval; Darlene Madison; Peter A. Richardson; Steven Hill; David Rose; David Blessing; Elio Castro; Elmer Umbenhower; Raymond Hayes; Gene Horrocks; Kiah Mincey; Clifton Feathers; Willie Johnson; David Badillo; James Simmons; Flora Abrams; Joey Gough; Timothy Whisman, Plaintiffs-Appellees,
v.
Gray DAVIS, Governor of the State of California; Robert Presley, Secretary of the Youth and Adult Correctional Agency; James Nielsen, Chairman of the Board of Prison Terms; California Board of Prison Terms, Does 1-100, in their Individual and Official Capacity; Joseph Sandoval; James Gomez, Director Dept Corrections; Kyle McKinsey; Kevin Carruth; Marisela Montes, Deputy Director of the Parole and Community Services Division, Defendants-Appellants.
 No. 01-15779.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted September 18, 2002.
 Filed February 10, 2003.
 
 Jessica N. Blonien and G. Michael German, Deputy Attorneys General of the State of California, San Francisco, CA, for the defendants-appellants.
 Andrea G. Asaro and Michael Bien, Rosen, Bien & Asaro, LLP, for the plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California; Claudia Wilken, District Judge, Presiding. D.C. No. CV-94-02307-CW(PJH).
 Before: REINHARDT, TASHIMA and BERZON, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 Defendants, state officials responsible for the operation of the California Department of Corrections ("CDC") and the California Board of Prison Terms ("BPT"), appeal an award of attorney's fees to Plaintiffs, a class of present and future California state prisoners and parolees with disabilities, who prevailed in their action under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"). We affirm the decision of the district court.[1]
 
 Background
 
 2
 Plaintiffs brought this action in 1994 to challenge California's treatment of disabled inmates and parolees. In 1996 all defendants except the officials of the BPT stipulated that adequate emergency evacuation plans for disabled prisoners were lacking in some facilities, that a smaller range of vocational programs was available to disabled prisoners than to non-disabled prisoners, and that sentence reduction credits had been improperly denied to some disabled prisoners. Armstrong v. Wilson, 124 F.3d 1019, 1021 (9th Cir.1997). These defendants ("CDC defendants") asserted, however, in a summary judgment motion, that the ADA and RA did not apply to state prisoners, and that the defendant state officials were immune from liability under the Eleventh Amendment. The district court denied the motion, Armstrong v. Wilson, 942 F.Supp. 1252, 1264 (N.D.Cal.1996), and issued a remedial order and injunction. The CDC defendants appealed, and we affirmed, holding that "the ADA and RA apply to inmates and parolees in the state penal system and that this suit may proceed in federal court under the doctrine of Ex parte Young [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)]," which provides an exception to Eleventh Amendment immunity. Armstrong, 124 F.3d at 1026. Under the remedial order and injunction, the CDC defendants evaluate their programs and develop remedial plans, while Plaintiffs monitor Defendants' compliance.
 
 
 3
 The remedial order and injunction provides that Plaintiffs are the prevailing party and are entitled to attorney's fees, litigation expenses, and costs, for litigation as well as for monitoring for compliance. The procedure for collecting fees is set forth in a 1997 stipulation and order for periodic collection of attorney's fees, which was agreed upon by the parties. Disputes regarding the periodic fees are resolved through negotiation or, where negotiation fails, through a motion to compel.
 
 
 4
 The CDC defendants filed a petition for writ of certiorari, seeking review of our decision in Armstrong and our decision in a related case, Clark v. California Department of Corrections, 123 F.3d 1267 (9th Cir.1997). While the petition was pending, two other petitions were filed raising the issue whether the ADA applies to state prisoners. See Amos v. Md. Dep't of Pub. Safety, 126 F.3d 589 (4th Cir.1997) (holding ADA does not apply to state prisons), cert. granted, judgment vacated, case remanded by 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998); Yeskey v. Penn. Dep't of Corr., 118 F.3d 168 (3d Cir.1997) (holding ADA does apply to state prisons), aff'd 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998).
 
 
 5
 Counsel for the plaintiff in Yeskey asked the Prison Law Office, which was counsel for Plaintiffs in Armstrong, whether, if certiorari were granted in Yeskey, rather than in Armstrong, that Office would represent the Yeskey plaintiff before the United States Supreme Court. Because a Supreme Court decision on the application of the ADA to prison inmates would affect the Armstrong Plaintiffs with equal force regardless of which case the Court chose as its vehicle to address the issue, the Prison Law Office agreed to represent the Yeskey plaintiff in such circumstance.
 
 
 6
 The Supreme Court granted certiorari in Yeskey, and the Prison Law Office appeared on behalf of the Yeskey plaintiff. The Court then held that the ADA does apply to state prisoners, as Yeskey and Armstrong had both concluded. Yeskey, 524 U.S. at 213, 118 S.Ct. 1952. One week later the Court denied the petition for certiorari in Armstrong and Clark. Wilson v. Armstrong, 524 U.S. 937, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998). Thus, Plaintiffs' counsel successfully protected the Armstrong decision of this court by prevailing in Yeskey in the Supreme Court.
 
 
 7
 The BPT portion of the original case went to trial. During discovery, Plaintiffs deposed a number of BPT officials and one expert, and arranged for their own experts to inspect certain prison facilities and to conduct other types of investigation. Before trial, the BPT defendants filed two motions to dismiss, a motion for summary judgment, and a motion for continuance of trial. Shortly before trial, the district court permitted Plaintiffs to add a claim for due process violations under § 1983. After pre-trial motions were resolved, a ten-day bench trial was held. The district court then found the BPT liable for violations of the ADA, the RA, and the Due Process Clause of the Constitution. After further post-trial proceedings, the court issued a permanent injunction requiring the BPT to bring its policies and practices into compliance with the law. The BPT defendants appealed, and we affirmed the main elements of the district court's decision and injunction. Armstrong v. Davis, 275 F.3d 849, 879 (9th Cir.2001).
 
 District Court's Award of Attorney's Fees
 
 8
 Defendants appeal from four orders by the district court awarding Plaintiffs fees and costs for litigation and for monitoring Defendants' compliance with the injunctions.
 
 
 9
 Order of March 19, 2001 Awarding Attorney's Fees and Costs Incurred in Yeskey
 
 
 10
 In October 1999, Plaintiffs sought attorney's fees from Defendants for the work performed in litigating Yeskey before the Supreme Court. Plaintiffs argued that their attorneys' work in Yeskey was reasonably necessary to further their interests in their litigation against the Armstrong Defendants. Defendants objected that they cannot be compelled to pay fees in a case that did not involve them.
 
 
 11
 The district judge granted Plaintiffs' motion in part. Relying primarily on Hasbrouck v. Texaco, Inc., 879 F.2d 632 (9th Cir.1989), in which we affirmed an award of attorney's fees in an antitrust suit for work done on an amicus brief before the Supreme Court in a separate case that did not involve the Hasbrouck defendants, the district court held that Plaintiffs could collect fees from the Armstrong Defendants for the amount of work that would have been necessary to file an amicus brief in Yeskey. Further briefing was ordered to establish the appropriate fees.
 
 
 12
 In response to the parameters set by the district court in the March 10, 2000 order, Plaintiffs lowered their fee request for the Yeskey litigation from somewhat over $335,000 to $258,568.13. Defendants then raised four objections to the request: 1) fees should be limited by a provision of the Prison Litigation Reform Act (PLRA) that limits attorney's and paralegal's fees in certain actions brought by prisoners, 42 U.S.C. § 1997e(d); 2) even if the PLRA limit does not apply to the ADA and the RA claims, it applies to the § 1983 claim, and for this reason the district court should apply the limit to one third of the claimed work; 3) the fees and costs exceed what would have been necessary to file an amicus brief in Yeskey; and 4) the hours claimed are excessive.
 
 
 13
 On March 19, 2001, the district court rejected Defendants' first three objections but agreed that the hours claimed were excessive. Accordingly, it awarded a reduced amount, $108,352.38. It is from this reduced amount that Defendants appeal.
 
 
 14
 Order of March 19, 2001 Awarding Fees and Expenses Incurred During the First Quarter of 2000 in the CDC Portion of the Case
 
 
 15
 This order arose from a motion to compel the CDC defendants to make the periodic payment for the first quarter of 2000. Defendants disputed the fees for the first quarter of 2000 on three grounds: 1) that the PLRA limit on attorney's and paralegal's fees should apply; 2) that the limit on expert fees of § 1988 should apply; and 3) that Plaintiffs' attorneys claimed excessively high rates. Plaintiffs moved to compel payment. The district court awarded the full amount requested by Plaintiffs, including interest.
 
 
 16
 Order of March 21, 2001 Awarding Fees and Expenses for Work Arising from the Proceedings Against the BPT
 
 
 17
 This order granted Plaintiffs' motion for attorney's fees arising from pre-judgment litigation and from monitoring of the BPT's compliance with the injunction during the first quarter of 2000. The BPT defendants here made all the same objections that were addressed in the March 19 order concerning first quarter 2000 fees in the CDC portion of the case, discussed above. They also raised two additional objections: 1) Plaintiffs were seeking attorney's fees for non-compensable items, such as parking and office supplies; and 2) because certain monitoring issues remained unresolved, it was premature to award fees for monitoring activities. The district court awarded the full amount requested by Plaintiffs, including interest.[2]
 
 
 18
 Order of March 21, 2001 Awarding Fees and Expenses for Post-Judgment Work Arising from the Proceedings Against the BPT and Setting 2001 Rates
 
 
 19
 This order granted Plaintiffs' motion for payment of attorney's fees and expenses for post-judgment work performed between April 1, 2000 and December 31, 2000, and Plaintiffs' motion to set the rate for fees for 2001. Defendants made all the same objections that were addressed in the March 19 order concerning first quarter 2000 fees in the CDC portion of the case, discussed above. The district court awarded the full amount requested by Plaintiffs, including interest.
 
 Discussion
 
 20
 It is not disputed that Plaintiffs were the prevailing party and were therefore entitled to reasonable fees and costs, under 42 U.S.C. § 12205 (fees provision of ADA), 29 U.S.C. § 794 (fees provision of Section 504 of RA), and/or 42 U.S.C. § 1988(b) (civil rights fees provision).[3] We review an award of attorney's fees for an abuse of discretion. Corder v. Brown, 25 F.3d 833, 836 (9th Cir.1994) (citing Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). "Any elements of legal analysis which figure in the district court's decision are, however, subject to de novo review." Corder, 25 F.3d at 836.
 
 
 21
 Although this appeal arises from four orders, to each of which Defendants raise more than one objection, in order to reach our decision we need address only three issues: 1) whether the district court acted properly in awarding fees for work Plaintiffs' counsel conducted in litigating Yeskey; 2) whether the district court acted properly in declining to apply the PLRA attorney's fees limits to the present case; and 3) whether the district court acted properly in approving the various fees and expenses that Defendants believe were excessive or duplicative, or not properly compensable.
 
 Litigating Yeskey
 
 22
 The district court must base its determination whether to award fees for counsel's work on its judgment as to whether "the work product ... was both useful and of a type ordinarily necessary to advance the ... litigation." Webb v. Bd. of Educ., 471 U.S. 234, 243, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985); G & G Fire Sprinklers, Inc. v. Bradshaw, 156 F.3d 893, 908 (9th Cir.1998) (quoting Webb), rev'd on other grounds, G & G Fire Sprinklers, Inc. v. Lujan, 255 F.3d 990 (2001).
 
 
 23
 The district court found that to protect Plaintiffs' interests in Armstrong, it would have been useful and necessary at least to have filed an amicus brief in Yeskey, because Yeskey involved an issue central to the litigation in Armstrong. On that basis, the court awarded a fee that it found would have been appropriate for the work necessary to prepare an amicus brief, rather than for the full work necessary to represent the Yeskey plaintiff in the Supreme Court. Defendants contend that no fees are chargeable to them for the work done in Yeskey, because they were not parties in that case.
 
 
 24
 Hasbrouck is dispositive of Defendants' argument. In Hasbrouck, an antitrust case, we approved the award of attorney's fees to the plaintiffs for their counsel's preparation of an amicus brief to the Supreme Court in a case involving different parties, because, we held, the award of fees should cover "every item of service which, at the time rendered, would have been undertaken by a reasonably prudent lawyer to advance or protect his client's interest" in the case at bar. Hasbrouck, 879 F.2d at 638 (internal quotation marks omitted); see also Gates v. Gomez, 60 F.3d 525, 535 (9th Cir.1995) (awarding fees pursuant to § 1988 for filing an amicus brief with a district court).
 
 
 25
 Defendants next argue that Hasbrouck is an antitrust case and Armstrong is a prisoner case. The argument consists simply of that statement of fact. Defendants offer no reason why the Hasbrouck rule is not applicable in all classes of cases, and we are aware of none.
 
 
 26
 Alternatively, Defendants seek to distinguish Hasbrouck. They do so on the basis that the plaintiffs' counsel in that case actually filed an amicus brief. Here, as they put it, the district court "pretend[ed]" that Plaintiffs' counsel filed an amicus brief, but, in fact, Plaintiffs' counsel represented a party. This argument fails, in part because it rests upon the unstated and mistaken premise that a reasonably prudent lawyer would not determine it to be in his client's interests for him to undertake to represent another party in an appellate proceeding in which the result would likely substantially affect his client's interests. Contrary to Defendant's assumption, in some circumstances prudence would compel a lawyer, as part of his obligation to protect his client's interests, to accept an offer to represent a party whose interests coincided with those of his client.
 
 
 27
 The Yeskey case presented such circumstances, because the issue to be decided by the Supreme Court in Yeskey was likely to have an important effect on the outcome in Armstrong. Contrary to the assertion of Defendants, therefore, the Prison Law Office did not misplace its loyalty by agreeing to handle the Yeskey Supreme Court proceeding. Rather, it acted in the best interests of its Armstrong clients by providing assistance in Yeskey in whatever capacity it could — including representing the Yeskey plaintiff in the Supreme Court. Surely, undertaking that representation served to protect its clients' rights even more than the filing of an amicus brief would have.
 
 
 28
 Because the Yeskey plaintiff prevailed in the Supreme Court, had an award of attorney's fees been available to him, Defendants here would likely have received a free ride. California's position would have been represented before the Court by Pennsylvania, which would probably have borne the full cost of asserting that position, including paying the Prison Law Office's attorney's fees. In such case, the California officials would have received this benefit for no other reason than that the Supreme Court happened to have chosen Yeskey, rather than Armstrong, as the vehicle for deciding an issue common to both cases. However, unfortunately for the Armstrong Defendants, following the Supreme Court decision in Yeskey, the plaintiff in that case lost on a summary judgment motion in the district court and, as a result, no fees were available from Pennsylvania for any part of that case, including the successful work done in the Supreme Court by the Prison Law Office. Yeskey v. Penn. Dep't of Corr., 76 F.Supp.2d 572, 578 (M.D.Pa.1999). Thus, fees for that work were, from a practical standpoint, available only from Defendants here. Because the work in Yeskey was important to the preservation of the Armstrong Plaintiffs' rights, and because their counsel performed the work in order to protect their interests, they would be entitled as the prevailing party in the Armstrong litigation to an award of attorney's fees for that work from the Armstrong Defendants.
 
 
 29
 Because Plaintiffs here do not cross-appeal the district court's order, we do not address whether that court abused its discretion by declining fees for work in excess of that which would have been necessary to file an amicus brief. We note, however, that because the work necessary to file an amicus brief is less than that necessary to act as a party's counsel, it cannot be Defendants who suffered from the district court's reliance on the fiction of an amicus brief.
 
 
 30
 Defendants raise further objections. First, they note that the Supreme Court in Yeskey addressed the application of the ADA to state prisons but not the application of the RA.[4] The Armstrong Defendants were found to have violated both Acts, and yet a violation of either Act would have been sufficient to justify the injunction that was ordered against them. They argue, therefore, that Yeskey — because it addressed only one of the two bases for the decision against them — was not determinative of the outcome in Armstrong and that litigating Yeskey was, for that reason, not a proper undertaking for Plaintiffs' counsel.
 
 
 31
 This argument has no merit. The ADA was thoroughly litigated in Armstrong and was a principal ground on which the decision in favor of the Armstrong Plaintiffs was based. By then litigating the ADA issue in Yeskey, Plaintiffs' counsel protected its ruling in Armstrong and thereby advanced its clients' interests. Defendants' argument is also baseless for the reason that the ADA and RA issues are such that a decision concerning one might possibly have affected the other.[5]
 
 
 32
 Defendants also argue that it is unfair to award fees for a case in which they were not involved because they are unable to conduct a meaningful review of Plaintiffs' billing requests. We do not see why that is so. Detailed billing information was submitted, and the briefs and oral argument transcript for the Supreme Court proceedings are available. Also, discovery could have been undertaken. The court itself did conduct a careful review, find that the fees requested by Plaintiffs were excessive, and award an accordingly lower amount.
 
 
 33
 Moreover, the same difficulty in assessing fees would arise wherever the plaintiffs requested fees for counsel's work on a separate case. Defendant's argument is therefore foreclosed by Hasbrouck, which holds that fees for work on a separate case are appropriate when the work is reasonably necessary to the interests of the client. See also Gates, 60 F.3d at 535.
 
 
 34
 Finally, Defendants note that Plaintiffs submitted their initial motion for attorney's fees for the Yeskey litigation before that case was concluded and suggest that the district court therefore lacked jurisdiction to address it. The district court issued its final judgment ending Yeskey on December 14, 1999, about two months after Plaintiffs' initial motion. Yeskey, 76 F.Supp.2d at 572. However, the Supreme Court litigation for which Plaintiffs sought fees had ended with the Court's opinion, filed June 15, 1998, Yeskey, 524 U.S. at 206, 118 S.Ct. 1952, and the district court in Armstrong did not issue its order awarding fees for the Yeskey litigation until March 19, 2001. It is true that it would have been imprudent if not erroneous for the district court to have made its final decision with respect to the amount of fees before the Yeskey judgment was issued, but there was no jurisdictional barrier to its considering a number of the legal issues involved prior to that time, including the question whether fees for counsel's services in Yeskey could properly be awarded in this case.
 
 PLRA Limits on Fees
 
 35
 Application of PLRA Limits to Fees Under ADA and RA
 
 
 36
 The PLRA provides that in prison actions "in which attorney's fees are authorized under section 1988," such fees may not be "based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of title 18." 42 U.S.C. § 1997e(d)(3). Defendants assert that, although Plaintiffs brought their action under the ADA and the RA, "the remedy provisions of the ADA and RA bring the fee award under the PLRA." If Defendants were correct, the result would be that attorney's rates in this case would be limited to $112.50 per hour. See 18 U.S.C. § 3006A(d)(1).
 
 
 37
 Defendants' argument is as follows: The enforcement provision of Title II of the ADA incorporates the remedial provisions of the RA. 42 U.S.C. § 12133.[6] The RA, in turn, incorporates the remedies of Title VI of the Civil Rights Act of 1964. 29 U.S.C. § 794a(a)(2).[7] Title VI, in turn, is one of the statutes for which attorney's fees are available under § 1988. 42 U.S.C. § 1988.[8] Thus, Defendants argue, the attorney's fees under the ADA are "authorized under section 1988," within the meaning of the PLRA.
 
 
 38
 As the district court held, the defendant's argument fails, because the ADA and the RA have their own attorney's fees provisions. 42 U.S.C. § 12205 (ADA fees provision); 29 U.S.C. § 794 (RA fees provision). There is therefore no need to follow Defendant's tortuous path to the attorney's fees provision of § 1988, as the one court to address this issue, in the Western District of New York, properly concluded. Beckford v. Irvin, 60 F.Supp.2d 85, 88 (W.D.N.Y.1999) ("The PLRA does not limit the award of attorney's fees to a prevailing plaintiff whose award is authorized under a statute separate from § 1988.").[9] Furthermore, § 1988 provides a list of the statutes to which its attorney's fees provision applies, and neither the ADA nor the RA is on the list. See 42 U.S.C. § 1988(b).
 
 
 39
 The PLRA cap on attorney's fees, therefore, does not apply to fees awarded under the ADA or the RA.
 
 Fees for Work on Due Process Claim
 
 40
 Plaintiffs brought their due process claim under § 1983, which, unlike the ADA and the RA, lacks an independent attorney's fee provision and is listed among the statutes to which the § 1988 attorney's fees provision applies. 42 U.S.C. § 1988(b). As noted above, the PLRA limit on fees applies to attorney's fees awarded under § 1988. Defendants argue, therefore, that, even if the PLRA limit on fees does not apply to work related to the ADA and RA, it should apply to the hours Plaintiffs' counsel worked preparing the due process claim. They cite Beckford, 60 F.Supp.2d at 88, in which a prison inmate who prevailed under both the PLRA and § 1983 was awarded fees that were limited by the PLRA to the extent that the work of counsel pertained to the § 1983 claim. Because Plaintiffs' counsel has not specified exactly how much of its work was related to the due process claim, Defendants believe they are entitled to the presumption that Plaintiffs' counsel spent equal time on each of its three claims. The PLRA limit would, then, apply to one third of the total award arising from the judgment against the BPT.
 
 
 41
 No doubt, the district court could have chosen the approach of Beckford and applied PLRA limits to some of the requested fees. We cannot say, however, that its decision not to do so was an abuse of discretion. The due process claim was added late in the litigation against the BPT. The district court made its determination not to apply PLRA limits on the basis of Plaintiffs' counsel's testimony that "the Fourteenth Amendment claim ... composed a small portion of the trial and trial preparation work" and on the fact that the post-judgment work involved the ADA and RA claims exclusively. The tertiary § 1983 claim required no additional discovery or witnesses at trial, and the arguments supporting it so overlapped with the ADA and RA claims as to make discrete time allocation and billing challenging. In light of these circumstances, the district court reasonably concluded that it was not appropriate to apply the PLRA limits. This determination was well within its discretion. See 1 MARY FRANCIS DERFNER & ARTHUR D. WOLF, COURT AWARDED ATTORNEY FEES, ¶ 12.02[1][b] at 12-13 (2001) (noting that Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), "indirectly supported" the existing majority rule that if "fee claims and non-fee claims were so intertwined that the time spent on the claims could not reasonably be divided, fees could be awarded for the entire case"); see also Hensley, 461 U.S. at 435, 103 S.Ct. 1933 (describing cases in which "the plaintiff's claims for relief ... involve a common core of facts or [are] based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis .... Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.").
 
 
 42
 Fees and Costs Defendants Believe Were Excessive, Duplicative, or Otherwise Inappropriate
 
 
 43
 Finally, Defendants argue that the district court awarded fees at excessively high rates, for excessive or duplicative work, and for inappropriate expenses. However, we find no reason to believe that the district court abused its discretion in any of its awards. Defendants do not point to any particular fee entries or claimed hours as being too high. Each of the district court's orders reflects careful consideration of Plaintiffs' billing statements and proper evaluation of the billing rates. In the order of March 19, 2001 relating to the Yeskey litigation, the district court did find that the requested fees were excessive and reduced the award accordingly. Our own review of the record revealed many other instances in which reasonable people could disagree about whether the fees awarded were too high but none in which the district court acted outside the broad range of its discretion in determining appropriate fees. See Gates v. Rowland, 39 F.3d 1439, 1448 (9th Cir. 1994).
 
 
 44
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 In a separate memorandum disposition filed concurrently herewith we address the CDC Defendants' appeal from a portion of the injunction issued in the underlying proceeding
 
 
 [2]
 The awarded fee was, however, reduced by an amount that had been withdrawn by Plaintiffs in their reply to the defendants' opposition to the motion for fees
 
 
 [3]
 As discussed below, it is disputed whether the PLRA fees provision places a cap on these fees
 
 
 [4]
 Plaintiff inYeskey invoked only the ADA. The Court of Appeals nonetheless found it necessary to address the RA as well. See Yeskey, 118 F.3d at 170. The Supreme Court, though, did not. See Yeskey, 524 U.S. at 213.
 
 
 [5]
 Pennsylvania's brief as Petitioner inYeskey so suggests. Although the "Question Presented" concerned only the ADA, Brief for Petitioners at i, Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998), Pennsylvania mentioned the RA several times in its brief and even had occasion to assert that "[l]ike the ADA, the introductory language of the Rehabilitation Act contains not even a hint that Congress intended its protections to apply to state prisoners." Id. at 14 n. 3.
 
 
 [6]
 "The remedies, procedures, and rights set forth in section 505 of the Rehabilitation Act of 1973 (29 U.S.C. § 794a) shall be the remedies, procedures, and rights this title provides to any person alleging discrimination on the basis of disability in violation of section 202 [42 U.S.C. § 12132]." 42 U.S.C. § 12133
 
 
 [7]
 "The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 504 of this Act [29 U.S.C. § 794]." 29 U.S.C. § 794a(a)(2)
 
 
 [8]
 Section 1988 provides that
 [i]n any action or proceeding to enforce a provision of sections 1977, 1977A, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 U.S.C. §§ 1981-1983, 1985, 1986], title IX of Public Law 92-318 [20 U.S.C. § § 1681 et seq.], the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.], or section 40302 of the Violence Against Women Act of 1994, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 42 U.S.C. § 1988(b).
 
 
 [9]
 As authority for their argument, Defendants cite decisions by our sister circuits interpreting a different provision of the PLRA, § 1997e(e), which does not concern attorney's feesSee, e.g., Thompson v. Carter, 284 F.3d 411, 416-19 (2d Cir.2002). These cases have no bearing on the issue whether statutes with their own attorney's fees provisions are subject to the fee cap of § 1997e(d).