[No. H032542. Sixth Dist. May 4, 2009.]

MARTIN RAMON, Plaintiff and Appellant, v.
COUNTY OF SANTA CLARA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B.

916

917

**COUNSEL**

Law Offices of S. Chandler Visher, S. Chandler Visher; Law Offices of Matthew J. Witteman, Matthew J. Witteman; Law Offices of Bradley C. Arnold and Bradley C. Arnold for Plaintiff and Appellant.

Ann Miller Ravel, County Counsel, Stephen H. Schmid, Deputy County Counsel, and Aryn Paige Harris, Deputy County Counsel, for Defendant and Appellant.

**OPINION**

**MIHARA, Acting P. J.**—Martin Ramon brought a class action to prevent the County of Santa Clara (County) from billing individuals for the cost of their arrests for driving under the influence of alcohol or drugs when there was no emergency "incident" as the term is used in Government Code section 53150. After the parties entered into a settlement agreement that provided injunctive and declaratory relief to the class, the trial court awarded attorney's fees to Ramon pursuant to Code of Civil Procedure section 1021.5.[1] On appeal, Ramon challenges the amount of the attorney's fees award. He contends that the trial court erred in concluding that the case of *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169 [39 Cal.Rptr.3d 788, 129 P.3d 1] (*Connerly*) precluded the recovery of attorney's fees to Ramon for work performed by his counsel in opposing the County's amicus curiae brief in a related lawsuit that resolved the issue in the present case. We agree and remand for a determination of the appropriate fee award for such work.

The County cross-appeals and argues that the trial court abused its discretion in awarding attorney's fees for services provided by Ramon's counsel in a previous action filed in Alameda County. We reject this argument.

---

[1] All further statutory references are to the Code of Civil Procedure unless stated otherwise.

## I. Factual and Procedural Background

In July 2002, Ramon was one of several plaintiffs naming the County and other public entity defendants in *Dubray v. City of Dublin*, in Alameda County Superior Court (2005, No. 2002057128) (*Dubray*). At issue was whether Government Code section 53150 et seq. authorized governmental agencies to bill individuals, who had been arrested for driving under the influence without being involved in an accident, for emergency response costs. In August 2002, the first amended complaint, which named eight individual plaintiffs and 10 separate public entity defendants, was filed in *Dubray*. Each plaintiff was a resident of a different county.

In March 2003, a second amended complaint was filed in *Dubray*, which increased the number of individually named plaintiffs to 13 and public entity defendants to 23. In response to the second amended complaint, the defendants raised standing and joinder issues. In June 2003, the trial court ruled on several joinder and class action issues, and sustained the defendants' demurrer to the second amended complaint with leave to amend.

After the defendants filed demurrers to the plaintiffs' third amended complaint in *Dubray*, the trial court ruled that the plaintiffs' allegations of commonality were insufficient to support a plaintiff class and sustained a demurrer to the class action allegations without leave to amend. The trial court also ordered a case management conference to address procedural issues involving its jurisdiction over claims against non-Alameda County entities.

In November 2003, the trial court issued an order that stayed all proceedings against non-Alameda County entities, including the County, pending the plaintiffs' decision regarding the filing of a petition for coordination. The plaintiffs' petition for coordination was denied in February 2004. In June 2004, the trial court dismissed the *Dubray* action as to all non-Alameda County entities on the ground of misjoinder.

In March 2005, Ramon filed a class action complaint in Santa Clara County Superior Court against the County seeking declaratory and injunctive relief, and alleging breach of contract, money had and received, and a violation of the equal protection clause. In May 2005, the County filed a demurrer to the complaint. Following the filing of opposition by Ramon, the trial court overruled in part and sustained in part the County's demurrer.

In September 2005, Ramon filed a first amended class action complaint. After the County filed an answer, the trial court imposed a stay upon request of the parties pending the decision in *California Highway Patrol v. Superior*

*Court (Allende)* (2006) 135 Cal.App.4th 488 [38 Cal.Rptr.3d 16]. The issue in *Allende* was which costs could be recovered under Government Code section 53150. The County and the League of California Cities filed an amicus curiae brief in *Allende* in which they argued, as the County asserted in the present case, that emergency response costs were recoverable even when there had been no incident requiring an emergency response. Ramon's attorneys filed opposition to the County's amicus curiae brief. On January 4, 2006, the reviewing court issued its decision in *Allende*, in which, among other things, it rejected the County's position. Ramon and the County then executed a settlement agreement in November 2006. Pursuant to this agreement, the County agreed to end its practice "of billing 'emergency response' costs to persons arrested for driving under the influence of alcohol or drugs ('DUI') in situations in which there has been no 'incident resulting in an appropriate emergency response' as that phrase is used in California Government Code section 53150 . . . ." The County also agreed to pay "reasonable . . . attorney fees as determined by the Court," $1,000 in costs, and $1,000 to Ramon.

In February 2007, Ramon filed his motion for attorney's fees pursuant to the terms of the settlement agreement and section 1021.5. Ramon argued that reasonable attorney's fees included not only compensation for certain services rendered in *Dubray*, but also for those rendered in *Allende*.

On November 28, 2007, the trial court issued its order on Ramon's motion for attorney's fees and costs. The trial court awarded Ramon $127,799.90 for attorney's fees incurred in the present case. The trial court found that Ramon had submitted sufficient evidence of all hours reasonably spent and of the reasonableness of counsel's hourly rates. The trial court denied Ramon's request for $81,539.10 for attorney's fees incurred in opposing the County's amicus curiae efforts in *Allende*, reasoning that, "[t]raditionally, amici curiae have not been considered parties liable for attorney's fees. (See *Connerly v. State Personnel Board*[, *supra*,] 37 Cal.4th 1169, 1177.) [The County] was not a party to the *Allende* matter, and participated in the *Allende* appeal solely in the capacity of an amicus curiae." The trial court then awarded Ramon attorney's fees incurred in *Dubray* in the amount of $29,943.24.

Ramon filed a motion for reconsideration, which the trial court granted. The trial court modified the order to award Ramon $1,000 in costs. It also modified the amount for attorney's fees incurred in *Dubray* and awarded $44,614.20. The order also stated that the total award of fees and costs was $173,414.10, and that "[t]o the extent possible, the attorney's fees" should be paid out of the class fund as provided in the parties' settlement agreement.

## II. Discussion

### A. Appeal

Ramon argues that the trial court erred in denying his request for attorney's fees that were incurred in opposing the County's amicus curiae brief in *Allende*.

#### 1. The *Allende* Action

In *Allende, supra*, 135 Cal.App.4th 488, real party in interest Allende caused a car accident while he was under the influence of alcohol. (*Allende*, at p. 493.) After the California Highway Patrol (CHP) billed Allende for various expenses in responding to the accident, he brought a class action complaint, which alleged, among other things, that the CHP could not charge him for some of these services under Government Code section 53150. (*Allende*, at pp. 493–494.) The trial court ruled in favor of Allende, and the CHP brought a petition for writ of mandate. (*Allende*, at p. 495.) The County and the League of California Cities then sought to file an amicus curiae brief in the reviewing court, arguing that the court's analysis would not be "complete" unless it considered "what constitutes an 'incident' triggering a public agency's right to seek reimbursement of costs under section 53150." (*Allende*, at pp. 495–496.) The reviewing court granted the request, but rejected the County's argument that "an arrest for driving under the influence of alcohol or drugs qualifies as an 'incident,' regardless of whether the driver causes an accident." (*Allende*, at pp. 496, 498–502.) The *Allende* court then held that the trial court had erred in its determination as to which costs the CHP was entitled to recover under Government Code section 53150, and granted the peremptory writ of mandate. (*Allende*, at pp. 502–509.)

#### 2. Standard of Review

The parties dispute the appropriate standard of review. Ramon argues that this court must consider the issue de novo, while the County argues that the proper standard is abuse of discretion. In *Connerly, supra*, 37 Cal.4th 1169, the California Supreme Court stated: " 'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' " (*Connerly*, at p. 1175, quoting *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142 [118 Cal.Rptr.2d 569].)

Here, the trial court denied attorney's fees incurred in the *Allende* case, because the County "was not a party to the *Allende* matter, and participated in

the *Allende* appeal solely in the capacity of an amicus curiae." Thus, the trial court's order was based on its resolution of a question of law. The County argues, however, that the abuse of discretion standard applies, because the facts in the present case are more complex than those in *Connerly*. We find no merit to this argument. The trial court's order was based on its conclusion that it had no authority to award attorney's fees. Moreover, the facts relating to both Ramon's and the County's involvement in *Allende* and the relationship between the litigation in *Allende* and the present case are undisputed. Accordingly, this court reviews the issue de novo.

### 3. The Merits

■ Section 1021.5 codifies the private attorney general doctrine of attorney's fees. This statute authorizes the trial court to award "fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest . . . ." (§ 1021.5.)[2] At issue in the present case is whether Ramon could recover attorney's fees that were incurred in opposing the County's amicus curiae brief in the *Allende* action.

We first consider whether *Connerly* is controlling. In *Connerly, supra,* 37 Cal.4th 1169, the plaintiff brought an action against six state agencies in which he challenged the constitutionality of several statutes that provided governmental preferential treatment based on race, sex, and other categories. (*Connerly,* at p. 1172.) Since the state agencies either did not participate in the litigation or litigated only the issues of standing and justiciability, the defense of these statutes was then left to various advocacy groups that supported affirmative action. (*Ibid.*) These groups filed amicus curiae briefs and were eventually designated real parties in interest. (*Ibid.*) They then sought to remove the action to federal court, filed a motion to peremptorily challenge the trial judge, sought discovery, and filed a cross-appeal. (*Connerly,*

---

[2] Section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor, unless one or more successful parties and one or more opposing parties are public entities, in which case no claim shall be required to be filed therefor under Part 3 (commencing with Section 900) of Division 3.6 of Title 1 of the Government Code. [¶] Attorneys' fees awarded to a public entity pursuant to this section shall not be increased or decreased by a multiplier based upon extrinsic circumstances, as discussed in Serrano v. Priest [(1977)] 20 Cal.3d 25, 49 [141 Cal.Rptr. 315, 569 P.2d 1303]."

at pp. 1173–1174.) However, the advocacy groups did not prevail, and the trial court eventually ordered the state agencies and the advocacy groups to pay attorney's fees to the plaintiff under section 1021.5. (*Connerly*, at p. 1174.)

■ At issue in *Connerly* was whether the advocacy groups could be considered " 'opposing part[ies]' " under section 1021.5. (*Connerly, supra*, 37 Cal.4th at p. 1175.) In interpreting the statute, our high court stated that "[g]enerally speaking, the opposing party liable for attorney fees under section 1021.5 has been the defendant person or agency sued, which is responsible for initiating and maintaining actions or policies that are deemed harmful to the public interest and that gave rise to the litigation." (*Connerly*, at pp. 1176–1177.) Based on that standard, the court concluded the advocacy groups were not "opposing parties," because they had no responsibility for the enactment or enforcement of the statutes in question. (*Ibid.*) The court also observed that "amici curiae traditionally have not been considered parties liable for attorney fees . . . [and they] perform a valuable role for the judiciary precisely because they are nonparties who often have a different perspective from the principal litigants." (*Connerly*, at p. 1177, citation omitted.) The court also rejected the plaintiff's argument that the advocacy groups, as real parties in interest who actively participated in the litigation, could be considered " 'opposing parties.' " (*Connerly*, at pp. 1178–1182.)

Here, the County's role as an amicus curiae was not comparable to that of the advocacy groups in *Connerly*. In *Connerly*, the advocacy groups participated in the litigation "to advocate a position not out of a direct interest in the litigation but from [their] own views of what [was] legally correct and beneficial to the public interest." (*Connerly, supra*, 37 Cal.4th at p. 1183.) In contrast to the typical amicus curiae, here, the County was being sued in another action for "maintaining actions or policies that [were] deemed harmful to the public interest and that gave rise to the litigation." (*Connerly*, at pp. 1176–1177.) Though the County was not a party in *Allende*, and thus did not have a direct interest in that litigation, it was nonetheless advocating the same interpretation of Government Code section 51350 that it did in the present action. In fact, the County acknowledged the benefits of its participation in the *Allende* action in its application for leave to file an amicus curiae brief in the trial court by noting that "negative resolution for the [CHP] could affect whether or not other entities are interested in resolving their litigation at an early stage. This could save the parties in numerous jurisdictions considerable time and money." The County and Ramon obtained a stay in the present action pending resolution of that issue in *Allende*. When the issue was resolved against the County in *Allende*, the County then entered into a settlement agreement that provided injunctive and declaratory relief to the

class in the present action. Thus, *Connerly* is factually distinguishable from the case before us, and its holding does not preclude an award of attorney's fees to Ramon.

We turn now to an examination of how other courts have resolved the issue of whether a plaintiff may recover attorney's fees for services relating to administrative hearings and collateral litigation. In *Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836 [216 Cal.Rptr. 649] (*Wallace*), California's Department of Food and Agriculture (Department) enjoined various consumer groups from selling milk below the minimum price. (*Wallace*, at p. 841.) The consumer groups then challenged the enforcement of the minimum price regulations by cross-complaint. (*Ibid.*) Prior to trial, the parties entered into a settlement, which provided, among other things, that if the Department held public hearings on the issue and suspended the minimum prices by a certain date, the action would be dismissed. (*Wallace*, at pp. 841–842.) The consumer groups participated in the hearings, which resulted in the Department's suspension of the minimum prices, and then sought attorney's fees pursuant to section 1021.5 for their participation in these hearings. (*Wallace*, at p. 842.) The reviewing court upheld the award of attorney's fees incurred in the public hearings, because these hearings were " 'intertwined inextricably' " with the lawsuit, and the legal services performed in the public hearings were "both useful and necessary to the ultimate resolution of the action, and directly contributed to that resolution." (*Wallace*, at pp. 848–849.)

■ A similar conclusion was reached in *Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740 [118 Cal.Rptr.2d 629] (*Bonta*). In *Bonta*, several hospitals brought an action in federal court alleging that the former State Department of Health Services (DHS) reimbursed in-state and out-of-state hospitals at different rates in violation of federal law, and they eventually obtained the requested declaratory and injunctive relief. (*Bonta*, at pp. 750–751.) The plaintiffs also sued the DHS in state court and sought damages for past underpayments. (*Bonta*, at pp. 752–753.) Following trial, the state court found in favor of the plaintiffs and awarded attorney's fees under section 1021.5. (*Bonta*, at pp. 755–756.) On appeal, the DHS argued that the plaintiffs were not entitled to attorney's fees incurred in the federal action. (*Bonta*, at pp. 777–778.) The reviewing court held that the trial court had discretion to award such fees, stating that "[t]he ancillary judicial proceedings with which we are here concerned related very directly to the issues presented in the action in which fees were awarded, and [the plaintiffs] prevailed in those proceedings. While the federal proceedings may not have been a necessary precondition of the superior court action, they materially contributed to the resolution of the constitutional issues presented to that court. The federal rulings not only relieved the superior court of burdensome

adjudicative responsibilities it would otherwise have had to undertake but also diminished the work required of counsel." (*Bonta'*, at p. 781.)

The County attempts to distinguish *Wallace* and *Bonta'* on the ground that those cases involved the recovery of attorney's fees by a single plaintiff, while the present case involves fees incurred for services for other plaintiffs in responding to the County's amicus curiae brief. However, we do not view this distinction as dispositive. As the court stated in *Californians for Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961, 971–972 [259 Cal.Rptr. 599], "[t]he question is not whether the parties to the administrative action are the same parties involved in the lawsuit, but rather has the successful party made the requisite showing that time spent in a related administrative proceeding was reasonably expended on the litigation because it was both useful and necessary and directly contributed to the resolution of the action. [Citations.]" Here, the County inserted its controversy with Ramon into the *Allende* case, and thus the legal services incurred by Ramon's counsel in *Allende* in response to the County's amicus curiae brief were useful and necessary, and directly contributed to the settlement of the present action.

■ The Ninth Circuit has also reached the conclusion that a successful party may recover attorney's fees for an amicus curiae brief in a separate action under certain circumstances.[3] In *Hasbrouck v. Texaco, Inc.* (9th Cir. 1989) 879 F.2d 632 (*Hasbrouck*), several gasoline retailers successfully brought an antitrust action, and were awarded attorney's fees. On appeal, the defendant argued that the plaintiffs were not entitled to an enhanced fee for their unsuccessful effort on an amicus curiae brief in another case. (*Hasbrouck*, at p. 638.) The reviewing court rejected the argument, stating that "it was reasonable to award fees for the *amicus* effort as an item of service which would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." (*Ibid.*) In *Armstrong v. Davis* (9th Cir. 2003) 318 F.3d 965 (*Armstrong*), the plaintiffs brought a class action against, among others, the former Department of Corrections (CDC) in which they successfully argued that California's treatment of disabled inmates violated both the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.) and the Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.). (*Armstrong*, at p. 968.) The CDC filed a petition for writ of certiorari. (*Ibid.*) While this petition was pending, a petition raising the same issue was filed in *Yeskey v. Com. of Pa. Dept. of Corrections* (3d Cir. 1997) 118 F.3d 168 (*Yeskey*). (*Armstrong*, at p. 968.) The *Yeskey* plaintiff's counsel asked the *Armstrong* plaintiffs' counsel to represent the *Yeskey* plaintiff if the United

---

[3] As the County acknowledges, federal decisions regarding the private attorney general doctrine codified in statutes similar to section 1021.5 are of analogous precedential value. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639, fn. 29 [186 Cal.Rptr. 754, 652 P.2d 985].)

States Supreme Court granted certiorari in *Yeskey* rather than in *Armstrong*. (*Armstrong*, at pp. 968–969.) After the Supreme Court granted certiorari in *Yeskey*, the *Armstrong* plaintiffs' counsel appeared on behalf of the *Yeskey* plaintiff and prevailed, thereby successfully protecting the *Armstrong* holding. (*Armstrong*, at p. 969.) The district court awarded attorney's fees to the *Armstrong* plaintiffs for the services that their counsel performed in *Yeskey*. (*Armstrong*, at p. 971.) The reviewing court affirmed, stating that "prudence would compel a lawyer, as part of his obligation to protect his client's interests, to accept an offer to represent a party whose interests coincided with those of his client." (*Armstrong*, at pp. 971–972.) Similarly, here, Ramon's counsel's opposition to the County's amicus curiae brief was also undertaken to protect Ramon's interests.

■ Relying on *MBNA America Bank, N.A. v. Gorman* (2006) 147 Cal.App.4th Supp. 1 [54 Cal.Rptr.3d 724] (*Gorman*), the County also argues that Ramon made no factual showing that he was or could be held responsible for fees incurred by his attorneys in opposing the County's amicus curiae brief in *Allende*. In *Gorman*, the appellate division of the superior court stated that "[t]ime is compensable [pursuant to section 1021.5] if it was reasonably expended and is the type of work that would be billed to a client. (See *Hensley v. Eckerhart* (1983) 461 U.S. 424, 434 [76 L.Ed.2d 40, 103 S.Ct. 1933].)" (*Gorman*, at p. Supp. 12.) Here, Ramon presented the trial court with time records documenting the services performed and the number of hours spent solely on the opposition to the amicus curiae brief in *Allende* case. As in *Gorman* and *Hensley v. Eckerhart*, these services are the type of work for which an attorney would bill his or her client.

■ We conclude that the trial court had the authority to award attorney's fees incurred in opposing the amicus curiae brief in *Allende* to Ramon and erred in failing to exercise its discretion. We remand the matter for further proceedings to give the trial court the opportunity to exercise its discretion.[4]

## B. Cross-appeal*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[4] The County also argues that the trial court would have abused its discretion if it had awarded the entire amount of $81,539.10 to Ramon, because the holding in *Allende* benefited several other plaintiff class actions. The trial court never considered the issue of the appropriate amount for these services, and thus we do not reach the issue on appeal.

*See footnote, *ante*, page 915.

## III. Disposition

The order is reversed. We remand the matter for further proceedings to give the trial court the opportunity to exercise its discretion to award attorney's fees incurred in opposing the amicus curiae brief in *Allende* to Ramon. Ramon is entitled to costs on appeal and cross-appeal.

McAdams, J., and Duffy, J., concurred.