**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CLARK ALLEN KIMBROUGH,
　　　　　　*Plaintiff-Appellee,*

　　　　v.

STATE OF CALIFORNIA,
DEPARTMENT OF CORRECTIONS; W.
WALKER, JR.; DAVID TRISTIAN; T.
ROUGEUX; J.P. MOSER; D. JESSUP;
D. FALCONER; C.L. PARKS; H.
KOSHER; GAIL LEWIS; W.J. JUAREZ;
R.R. PRIOLO; W. BUEHLER;
　　　　　　*Defendants,*

　　　　and

ANTHONY C. NEWLAND; EDWARD S.
ALAMEIDA;
　　　　　　*Defendants-Appellants.*

No. 08-17231

D.C. No.
2:98-cv-00392-
MCE-JFM

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted
December 10, 2009—San Francisco, California

Filed June 25, 2010

Before: Diarmuid F. O'Scannlain, Johnnie B. Rawlinson, and
Robert E. Cowen,* Circuit Judges.

*The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

9291

Opinion by Judge Rawlinson

## COUNSEL

Edmund G. Brown, Jr., Attorney General of the State of California, David S. Chaney, Chief Assistant Attorney General, Rochelle C. East, Senior Assistant Attorney General, Vickie P. Whitney, Supervising Deputy Attorney General, and Rebecca M. Armstrong-Grau (argued), Deputy Attorney General, Sacramento, California, for the appellants.

Steven H. Frankel and Joseph Angelo DeSantis (argued), Sonnenschein Nath & Rosenthal, LLP, San Francisco, California,

and Carter White, King Hall Civil Rights Clinic, U.C. Davis School of Law, Davis, California, for the appellee.

## OPINION

RAWLINSON, Circuit Judge:

Appellants Anthony C. Newland and Edward S. Alameida (State) challenge the district court's award of attorneys' fees to the U.C. Davis School of Law, King Hall Civil Rights Clinic (King Hall), pursuant to the Prison Litigation Reform Act (PLRA) and 42 U.S.C. § 1988.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse the award of fees because the services performed by King Hall on behalf of Clark Allen Kimbrough (Kimbrough) did not culminate in establishing a violation of Kimbrough's legal rights.

## I. BACKGROUND

### A. *First Amendment Claim*

Kimbrough, acting *pro per*, instituted this action by filing a Complaint alleging, among other things, that the California Department of Corrections and Rehabilitation's[1] (CDCR) grooming regulations concerning hair length interfered with his First Amendment right to free exercise of religion.[2] After

---

[1] The CDCR was known as the California Department of Corrections at the time this action was initiated.

[2] On October 16, 1997, the CDCR promulgated regulations, codified at 15 Cal.Code Regs. § 3062(e), which required prisoners to maintain their hair at no longer than three inches in length. *See* 15 Cal.Code Regs. § 3062(e) (2005). The grooming regulations have since been amended to permit inmates to maintain their hair at any length. *See* 15 Cal.Code Regs. § 3062(e) (2009).

the district court granted summary judgment in favor of the State on the First Amendment claim, Kimbrough appealed.

We enjoined enforcement of the grooming requirements during the pendency of the appeal, and also ordered the State to rescind any penalties imposed on Kimbrough for failure to comply with the regulations.

While Kimbrough's first appeal was pending, Congress passed the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). *See* 42 U.S.C. § 2000cc, *et seq.* We subsequently affirmed the district court's grant of summary judgment on Kimbrough's First Amendment claim, but remanded the action to the district court "to consider the applicability of [RLUIPA] or to develop the record that would be necessary if [RLUIPA] is to be applied." In conjunction with the remand order, we also ordered the State to "promptly rescind any penalties resulting from enforcement against [Kimbrough] of grooming standards concerning hair length during the pendency of this court's injunction."[3] We extended the injunction for sixty days after issuance of the mandate.

On remand, Kimbrough filed a motion seeking to extend the injunction. On September 18, 2001, the district court granted the motion enjoining the CDCR from enforcing the grooming requirements "until further order of the court."

B. *RLUIPA Claim*

On October 4, 2001, Kimbrough filed a Second Amended Complaint asserting claims under RLUIPA.[4] In his prayer for

---

[3]We required the State to rescind only penalties that were imposed during the pendency of the injunction. Prior to issuance of the injunction, Kimbrough was found guilty of violating the grooming regulations, resulting in forfeiture of thirty days of sentence reduction credits (good time credits). Because this penalty was imposed prior to the injunction, the State was not required to restore these lost good time credits.

[4]The Second Amended Complaint set forth two causes of action. In the first cause of action, Kimbrough alleged that the grooming regulations

relief, Kimbrough requested, among other things, that a permanent injunction be issued preventing the CDCR from enforcing the grooming regulations against him.

On November 6, 2003, Kimbrough, acting *pro per*, moved for a fifth extension of the preliminary injunction issued on September 18, 2001. One week later, King Hall was appointed to represent Kimbrough. On November 24, 2003, Kimbrough, again acting *pro per*, filed a motion for restoration of the lost good time credits. The district court again denied this motion without prejudice; however, the preliminary injunction was extended for a period of ninety days.

On February 17, 2004, an evidentiary hearing was held on Kimbrough's request for a permanent injunction. Following this hearing, Kimbrough, with the assistance of King Hall, renewed his request for restoration of the lost good time credits. The district court again denied this motion without prejudice.[5] Subsequently, on June 10, 2004, Kimbrough filed a notice of change of address to a non-correctional facility, signifying that he had been released from prison on parole.

Because it appeared that Kimbrough had been released from prison, the magistrate judge issued an order to show cause why the case should not be dismissed as moot. After considering Kimbrough's response, the magistrate judge determined that the case was moot, and recommended dis-

___

"violate[d] [his] right to the free exercise of his religion under the First and Fourteenth Amendments of the United States Constitution," and therefore violated RLUIPA. In the second cause of action, Kimbrough alleged that the grooming regulations violated RLUIPA because there was no "compelling governmental interest in said regulation not having a religious exemption . . ."

[5] The district court found, among other things, that Kimbrough "failed to establish that the time credits, if restored, would shorten his current sentence."

missal of the action for lack of jurisdiction.[6] The district court adopted the findings and recommendations of the magistrate judge over Kimbrough's objection. Kimbrough appealed the district court's decision.

On appeal, the State filed a motion to remand the action to the district court on the basis that "[Kimbrough's] claim for injunctive relief is not moot at this time." We granted the unopposed motion, and remanded the action to the district court "for further consideration of [Kimbrough's] claim for injunctive relief."

On remand, the magistrate judge again determined that the action was moot, and again recommended dismissal of the action for lack of jurisdiction. The magistrate judge focused primarily on Kimbrough's request for restoration of the lost good time credits, concluding that this issue was moot because the State presented evidence establishing that Kimbrough's grooming-related disciplinary conviction had been expunged. Moreover, the State voluntarily restored the thirty days of lost good time credits, and advanced Kimbrough's discharge date. The district court adopted the magistrate judge's findings and recommendations, and dismissed the action for lack of jurisdiction. However, the district court retained jurisdiction to consider a motion for attorneys' fees and costs.

Kimbrough subsequently filed a motion for an award of attorneys' fees to King Hall in the amount of $47,497.18. The magistrate judge recommended an award of $46,428.58 for attorneys' fees and $2,428.58 for costs. The district court

---

[6]The magistrate judge determined that the action was moot in part because Kimbrough was no longer subject to the grooming regulations as a result of being released from prison. Moreover, the magistrate judge determined that Kimbrough's request for restoration of lost good time credits was moot because "[u]nder California law, good time credits apply only to a term of imprisonment and not to any parole term."

adopted the magistrate judge's findings and recommendations over the parties' objections. The district court later amended its order, increasing the attorneys' fees award to $47,917.18. The State filed a timely notice of appeal.

## II. STANDARDS OF REVIEW

We review "the district court's interpretation of the PLRA's provisions governing attorneys' fees de novo." *Dannenberg v. Valadez*, 338 F.3d 1070, 1073 (9th Cir. 2003) (citations omitted). We also review *de novo* "the legal analysis underlying the district court's finding that [Kimbrough] was a prevailing party." *Citizens For Better Forestry v. U.S. Dep't of Agric.*, 567 F.3d 1128, 1131 (9th Cir. 2009) (citation omitted).

## III. DISCUSSION

**[1]** Because Kimbrough was incarcerated at the time this action was instituted, "[h]is recovery of fees is [ ] restricted by the PLRA." *Siripongs v. Davis*, 282 F.3d 755, 757 (9th Cir. 2002), *as amended*. We have previously noted that "[t]he PLRA limits the amount of attorney's fees that can be awarded for services performed in actions brought on behalf of prisoners." *Webb v. Ada County*, 285 F.3d 829, 834 (9th Cir. 2002). Congress enacted the PLRA for the purpose of "curtail[ing] frivolous prisoners' suits and to minimize the costs-which are borne by taxpayers-associated with those suits." *Id.* at 837 (citation omitted). The PLRA provision relevant to this appeal provides:

> (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that —
>
>> (A) the fee was directly and reasonably incurred in proving an actual violation of

> the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
>
> (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
>
> (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

42 U.S.C. § 1997e(d)(1). Pursuant to § 1988(b), courts have discretion to award a prevailing party reasonable attorneys' fees for any action or proceeding brought to enforce a provision of § 1983 or RLUIPA. *See* § 1988(b). However, "the PLRA limit on fees applies to attorney's fees awarded under § 1988." *Armstrong v. Davis*, 318 F.3d 965, 974 (9th Cir. 2003).

**[2]** An inmate does not qualify for attorneys' fees under the PLRA merely by obtaining prevailing party status within the meaning of § 1988. *See Siripongs*, 282 F.3d at 757-58 (affirming a district court's finding that a prisoner did not qualify for attorneys' fees under the PLRA even though the prisoner was found to be a prevailing party). Attorneys' fees will be awarded under the PLRA only to those inmates who have proven an actual violation of a protected right. *See id.*

The State contends that the PLRA precludes an award of attorneys' fees because no actual violation of Kimbrough's rights was established. Kimbrough counters that he "achieved more than a mere judicial acknowledgment of his assertion of a violation of rights" by "secur[ing] the restoration of his lost good time credits and a reduction in his term of custody." However, because the district court did not actually adjudicate Kimbrough's claims, our decision in *Siripongs* forecloses an award of attorneys' fees in this case.

In *Siripongs*, an inmate scheduled to be executed filed a clemency petition with then-California Governor Pete Wilson. *See Siripongs*, 282 F.3d at 756. After the clemency petition was denied, the inmate filed a Complaint under 42 U.S.C. § 1983, alleging that he was denied due process and subjected to cruel and unusual punishment during the clemency proceedings. *See id*. at 756-57. The district court issued a temporary restraining order (TRO) staying the inmate's execution pending a hearing on his request for a preliminary injunction. *See id.* at 757. However, the district court later denied the preliminary injunction, reasoning that the inmate had sufficient time to re-apply for clemency. *See id*.

The inmate proceeded to re-apply for clemency, but his petition was denied. *See id*. After the inmate was executed, the district court dismissed the inmate's Complaint. *See id*. However, the district court retained jurisdiction to decide on attorneys' fees. *See id*. The district court ultimately denied the inmate's motion for attorneys' fees, ruling that the inmate was a prevailing party within the meaning of § 1988, but nevertheless did not qualify for attorneys' fees under the PLRA. *See id*.

On appeal, the government argued for affirmance on the basis that "because the district court below issued only a TRO and never finally adjudicated the question of whether [the inmate's] rights were violated, he cannot be said to have incurred his fees in 'proving an *actual* violation of his rights,' as required by the PLRA." *See id.* at 758 (citation and alteration omitted) (emphasis in the original). Addressing the government's argument, we interpreted the "actual violation" language of § 1997e(d)(1), and concluded that "[t]he plain meaning of an 'actual violation' of [the inmate's] rights excludes a violation that has not been proven in fact, but merely has been asserted." *Id*. Therefore, even though the district court issued a TRO finding that the inmate was "reasonably likely to succeed on the merits of his constitutional claim[,]" we held that the inmate never established an actual

violation because no final adjudication of his claims was ever made. *Id.* Specifically, we noted that "[t]he [district] court never found, nor did the government ever concede, that [the inmate's] rights were violated." *Id.* Because the PLRA requirements had not been satisfied, we affirmed the district court's denial of attorneys' fees. *See id.*

**[3]** The instant case is directly analogous to *Siripongs*. As in *Siripongs*, the district court never adjudicated the claims asserted in Kimbrough's Second Amended Complaint. The only court-ordered relief Kimbrough attained through these proceedings was a preliminary injunction preventing the State from enforcing the grooming regulations against him. The district court held a permanent injunction hearing, but no permanent injunction was ever issued. Rather, the entire action was dismissed as moot before a final adjudication was ever rendered on Kimbrough's asserted claims.

**[4]** Similar to the situation in *Siripongs*, the temporary relief Kimbrough received in the form of a preliminary injunction did not affirmatively establish that the State actually violated his protected rights. Also, contrary to Kimbrough's assertion, no actual violation was established when the State voluntarily restored his lost good time credits and reduced his sentence because, in obtaining this relief, "[t]he [district] court never found, nor did the [State] concede, that [Kimbrough's] rights were violated." *Id.* Therefore, like the inmate in *Siripongs*, Kimbrough cannot be said to have incurred attorneys' fees in proving an actual violation of his rights, as required by the PLRA. *See id.*

Moreover, we have consistently awarded attorneys' fees under the PLRA only to those inmates who have affirmatively established violations of protected rights.[7] *See, e.g., Madrid v.*

---

[7]One case has been decided by a court within this circuit holding that an inmate need not affirmatively establish an actual violation in order to recover attorneys' fees under the PLRA. *See generally Ilick v. Miller*, 68

*Gomez*, 190 F.3d 990, 993-95 (9th Cir. 1999) (remanding for an award of attorneys' fees incurred following the enactment of the PLRA when the district court, after a three month trial, "verified many of the prisoners' complaints," and found "numerous constitutional infirmities"); *Webb*, 285 F.3d at 833 (affirming, in part, an award of attorneys' fees after the district court granted partial summary judgment finding that a jail's overcrowding was unconstitutional); *Dannenberg*, 338 F.3d at 1072, 1075-76 (remanding an award of attorneys' fees for a reasonableness determination after a jury found that the inmate's constitutional rights had been violated).

**[5]** Accordingly, we conclude that the district court erred by granting Kimbrough's motion for attorneys' fees. Our precedent establishes that Kimbrough cannot be said to have incurred attorneys' fees under the PLRA because he never established an actual violation of a right pursuant to which a fee may be awarded under § 1988. *See Siripongs*, 282 F.3d at 758.

**REVERSED.**

---

F. Supp. 2d 1169 (D. Nev. 1999). In *Ilick*, decided prior to *Siripongs*, the parties agreed to a voluntary dismissal of the claims contained in the inmate's Complaint after certain changes were made by the prison. *See id.* at 1172. After noting that the parties were "never really in a posture, such as after summary judgment or trial on the merits, in which a ruling could be made directly [ ] finding the existence of unconstitutional behavior[,]" the district court found the inmate was entitled to attorneys' fees under the PLRA because he brought about an alteration in the prison's behavior. *Id.* This holding directly conflicts with our decision in *Siripongs*.